INDEPENDENT SCHOOL DISTRICT NO. 454, FAIRMONT, MINNESOTA, Plaintiff,

v.

MARSHALL AND STEVENS COMPANY, a Delaware Corporation, Defendant and Third Party Plaintiff,

v.

STATISTICAL TABULATING CORPORATION, a Delaware Corporation, Third Party Defendant.

No. 4–71–Civ. 135.

United States District Court, D. Minnesota, Fourth Division.

Dec. 3, 1971.

1280

Charles R. Zierke, Erickson, Zierke, Kuderer, Utermarck & Sinor, Fairmont, Minn., for plaintiff.

Harding Orren and Stephen Cohen, Robins, Davis & Lyons, Minneapolis, Minn., for defendant and third party plaintiff.

Norman R. Carpenter, Faegre & Benson, Minneapolis, Minn., for third party defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

This action is presently before the Court on a motion by the third party defendant Statistical Tabulating Corporation (hereinafter referred to as S.T.C.) to quash the service of process made upon it by the defendant Marshall and

Stevens Company. The matter was argued to the Court on September 27, 1971.

Plaintiff is a Minnesota corporation with its principal place of activity in Fairmont, Minnesota. Defendant is a Delaware corporation with principal place of business in California. Defendant is licensed to conduct business activities in Minnesota and maintains a full time office in Minneapolis. Third party defendant S.T.C. is a Delaware corporation with principal place of business in Chicago, Illinois. S.T.C. is not qualified to do business in Minnesota and, although at one time it did maintain a small office in Minneapolis, it no longer does so.

The dispute between plaintiff and defendant arose out of a contract between them whereby defendant agreed to make an appraisal, for insurance purposes, of a junior high school building owned by plaintiff. Plaintiff claims that it insured the building for the amount recommended by defendant, that shortly thereafter the building was destroyed by fire, and that the insurance coverage was grossly inadequate to cover the damage caused by the fire. Plaintiff sued the insurance company and recovered the face amount of the policy, but claims that this amount was almost one million dollars less than the total damage caused by the fire.

In order to recover this alleged deficiency, plaintiff filed the instant action against defendant, claiming that defendant was negligent in appraising plaintiff's building and that defendant breached warranties to plaintiff by providing plaintiff with this allegedly inaccurate appraisal. Defendant answered the complaint by denying liability, and further by stating that even if it were found to be liable to plaintiff, the real culprit is S.T.C. Defendant therefore filed a third party complaint against S.T.C., alleging that in making the appraisal of plaintiff's building it relied on certain computations and calculations provided by S.T.C., and that these computations and calculations were incorrect. Defendant contends that S.T.C. performed these computations in a negligent manner and that S.T.C. breached warranties to defendant by providing defendant with these allegedly inaccurate computations. S.T.C. was personally served with the summons and complaint in Chicago pursuant to the Minnesota longarm statute, M.S. § 543.19.[1]

S.T.C. has not yet answered the third party complaint. Instead, it filed the instant motion to quash the service of process upon it. It claims that this Court cannot lawfully exercise personal jurisdiction over S.T.C.

This motion presents two issues for the Court's determination:

(1) Whether under the circumstances of this case personal service of process upon S.T.C. in Chicago

---

1. The portion of M.S. § 543.19 relied upon by defendant provides in pertinent part as follows:

   "Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

   \*      \*      \*      \*      \*

   (d) Commits any tort outside of Minnesota causing injury or property damage within Minnesota, if, . . . (2) products, materials or things processed, serviced or manufactured by the defendant were used or consumed within Minnesota in the ordinary course of trade . . . ."

   "Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

   Jurisdiction over S.T.C. in this action must be based upon this statute or not at all, since defendant has made no attempt to serve S.T.C. pursuant to the other Minnesota long-arm statute, M.S. § 303.13, which provides, inter alia, for service upon the Secretary of State.

was authorized by M.S. § 543.19; and

(2) If so, whether exercise of personal jurisdiction over S.T.C. by this Court would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Ordinarily this Court, in ruling on a motion of this type, would first decide the statutory issue and then, only if the statute were satisfied, would it face the constitutional issue. In the instant case, however, the statutory questions which are raised are substantial and have never been dealt with by the Minnesota Supreme Court.[2] This Court has serious doubts as to whether all of the provisions of the statute have been complied with; the Court, however, also has serious doubts as to whether the Minnesota Supreme Court would interpret the statute in the same manner. Therefore, in order to avoid speculation concerning the interpretation that the Minnesota Supreme Court would give to this statute, and because this Court has determined that the exercise of personal jurisdiction over S.T.C. in this case would violate due process, the Court will not rule on the statutory issue but will turn directly to the constitutional issue.[3]

The United States Supreme Court in a number of decisions has discussed the question of whether the exercise of personal jurisdiction over a nonresident defendant violates due process. An excellent discussion of these decisions can be found in the Eighth Circuit Court's opinion in Aftanase v. Economy Baler Co., 343 F.2d 187, 195–197 (8th Cir. 1965), and therefore need not be repeated here. It is sufficient to note, for purposes of this proceeding, that in order for the exercise of personal jurisdiction over a nonresident defendant to comply with due process, the defendant must have had "certain minimum contacts with . . . [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). It should also be noted that in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court stated that:

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

After summarizing the Supreme Court decisions, the Court in *Aftanase* noted that these decisions establish only general and not precise guidelines, and that each case must be decided on its own facts. The Court, however, did observe that certain factors are considered by the Supreme Court to be more important than others. The Court stated:

"[A]t one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and . . . two others,

---

2. Among the statutory issues raised by the instant motion are:
    (1) Whether S.T.C.'s conduct, even if defendant's allegations are taken as true, could possibly be considered to constitute the commission of a "tort" within the meaning of M.S. § 543.19;
    (2) If so, whether this conduct could possibly be considered to have caused "injury or property damage within Minnesota";
    (3) Whether S.T.C.'s calculations could be considered "products, materials or things processed, serviced or manufactured" by S.T.C. within the meaning of the statute; and
    (4) If so, whether these calculations could be considered to have been "used or consumed within Minnesota in the ordinary course of trade."

3. For a case in which a similar approach to this same problem is employed, see Washington Scientific Industries, Inc. v. Polan Industries, Inc., 302 F.Supp. 1354 (D.Minn.1969).

interest of the forum state and convenience, receive mention." 343 F.2d at 197.

In the instant case defendant alleges that S.T.C. has had a number of contacts with the State of Minnesota. Each of these alleged contacts will now be examined in light of the above principles.

■ First, defendant contends that the processing of the calculations by S. T.C. constituted a contact with Minnesota because the calculations concerned property which was located in Minnesota. An analysis of the nature and quality of this alleged contact, however, has convinced this Court that if indeed this processing can be considered a contact with Minnesota, it is at best an extremely tenuous one. The processing was done by S.T.C. in either Chicago or New York. The negotiations between S.T.C. and defendant concerning this processing took place in either Chicago or New York. All of the exchanges of information necessary to complete the calculations were accomplished in Chicago or New York. No allegation is made that S.T.C. ever had any direct dealings with the Minneapolis office of defendant. Indeed, it is quite clear that there were none. It appears that the negotiations proceeded in the following manner: plaintiff dealt with defendant's Minneapolis office, the Minneapolis office forwarded the necessary information to one of defendant's non-Minnesota offices, this non-Minnesota office made all of the arrangements and exchanges with S.T.C. and the non-Minnesota office then returned all of the necessary information to the Minneapolis office.

■ An analysis of the cases and articles dealing with this subject reveals that there are essentially two types of situations in which a single act by a nonresident, who has not entered the forum State, is considered to be a significant contact with the forum State.

(a) The first of these involves the situation where the nonresident has entered into a contract with a resident of the forum State. If any part of the contract was or is to be performed in the forum State, the courts will usually find that this constitutes a contact by the nonresident with the forum State.[4] This, however, was not the situation in the instant case. Although because it has a Minneapolis office defendant might be considered to be a resident of Minnesota for some purposes,[5] for purposes of its dealings with S.T.C. defendant clearly cannot be considered to have been acting as a Minnesota resident. As noted above, all of the negotiations, arrangements, transactions and exchanges between defendant and S.T.C. took place outside of Minnesota and were between S.T.C. and one of defendant's offices in either Chicago or New York. Furthermore, it appears that the bills for S.T. C.'s services were sent to the New York or Chicago offices and payment was remitted by one of those non-Minnesota offices. Defendant's Minneapolis office had no contact whatsoever with S.T.C. Thus, it seems clear that in its dealings with S.T.C. defendant cannot be considered to have been acting as a Minnesota resident. Also, from the above discussion it is equally clear that no part of the contract between defendant and S. T.C. was to be performed in Minnesota.

(b) The second type of situation in which a single act by a nonresident, who has not entered the forum State, is considered to be a significant contact with the forum State is where the act is tortious in nature, such as in the products liability type of case.[6] These cases,

---

4. See Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.Minn. 1965) for an analysis of this type of case.

5. See United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (D.Minn. 1964) for a discussion of the expanding concept of "residency."

6. See Williams v. Connolly, 227 F.Supp. 539 (D.Minn.1964); Ehlers v. United States Heating & Cooling Manufacturing Corp., 267 Minn. 56, 124 N.W.2d 824 (1963); and Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), for analyses of this type of case.

however, all involve the placing in interstate commerce of a product which, if defective, is potentially dangerous, or of something equivalent in nature. The dangerousness of the product seems to be the key in these cases. The instant case, however, is not such a case. The computations supplied to defendant by S.T.C. could not be considered to be potentially dangerous. If defective they might ultimately be the cause of a financial loss, but they could not be considered to be potentially dangerous to person or property as are the products in the type of case discussed above. The fact that S.T.C.'s computations were ultimately sent to Minnesota by the defendant does not in this Court's opinion connect S.T.C. with Minnesota for purposes of the present lawsuit.

For lack of a better analogy, it would seem to this Court that subjecting S.T.C. to personal jurisdiction in Minnesota because its computations ultimately were sent to Minnesota would be tantamount to subjecting a Chicago lawyer to personal jurisdiction in Minnesota because he supplied a memo to a New York client who used the memo in his relations with a Minnesota corporation which ultimately sued the New York client in Minnesota. Even if the Chicago lawyer knew that his memo was going to be used by the New York client in Minnesota, and even if the Minnesota corporation's cause of action arose out of the supplying to it of erroneous information by the New York client in reliance on the Chicago lawyer's memo, it seems obvious to this Court that to subject the Chicago lawyer to personal jurisdiction in Minnesota on the basis of these activities would be clearly inconsistent with traditional notions of fair play and substantial justice.

Thus, if indeed the processing of calculations for the defendant by S.T.C. can be considered a contact with Minnesota, it is at best an extremely tenuous one and is clearly insufficient to support an exercise of personal jurisdiction over S.T.C. in this action.

This processing of calculations is the only alleged contact by S.T.C. with Minnesota which has any relation to the cause of action involved in this case. The remaining alleged contacts, although completely unrelated to the instant cause of action, will now be discussed.

Defendant contends, as a second alleged contact, that for defendant alone S.T.C. processed, on 206 separate occasions, computations involving 110 separate entities owning real property in Minnesota, and that S.T.C. knew that these calculations involved Minnesota property. These alleged contacts, however, are subject to the same infirmities as the alleged contact out of which the instant dispute arose, which was just discussed. These calculations were processed by S.T.C. in the same manner as those previously discussed. S.T.C. dealt directly with one of defendant's non-Minnesota offices; it had no dealings with defendant's Minnesota office, nor with any other Minnesota resident in connection with these calculations. Also, this processing did not involve the placing in interstate commerce of a product which might be dangerous to person or property. Therefore, like the processing discussed above, the nature and quality of these alleged contacts makes it clear that they are so inconsequential as to be clearly incapable of supporting an exercise of personal jurisdiction over S.T.C.

Third, defendant emphasizes that S.T.C. admits that it processed calculations for other national corporations which may have offices or clients in Minnesota. This alleged contact requires little discussion. It is subject to the same infirmities as those discussed above. Since no potentially dangerous product was placed in interstate commerce, and since there has been no showing, nor even an allegation, that S.T.C. dealt with the Minnesota offices or clients of these corporations, this processing obviously cannot constitute a contact with Minnesota.

Fourth, defendant contends that S.T.C. has advertised in five publica-

tions which have a national distribution and that because some of these publications must have entered Minnesota, this constitutes a contact with Minnesota. Defendant, however, has failed to show the extent of the distribution of these publications in Minnesota, or even the nature of the advertising which was done. Also, S.T.C. asserts that this advertising was largely of the institutional type, and defendant has failed to contradict this assertion. It is this Court's opinion that there is very little quality in a contact such as this, especially where the extent of the distribution in Minnesota and the nature of the advertising are not shown. At best, this advertising can be considered only a very minimal contact with Minnesota.

■ Fifth, defendant points out that S.T.C. processed calculations for two separate Minnesota residents in 1970 and 1971, and that an employee of S.T.C. entered Minnesota in connection with one of these transactions. These two transactions appear to be the only real, non-remote contacts which the tabulating division of S.T.C. (the Stat-Tab Division) has had with Minnesota. For purposes of the instant proceeding, however, the significance of these contacts is quite minimal. From the information available to the Court it appears that S.T.C. did not solicit either of these transactions. The negotiations concerning these transactions appear to have been instigated in each case by the Minnesota residents. Also, there appears to have been only one entry into Minnesota by an employee of S.T.C. in connection with either of these transactions. This entry occurred in 1970 when the operations manager of the St. Louis office of the Stat-Tab Division came to St. Paul to submit the contract for one of the transactions. Furthermore, although complete figures have not been supplied, it appears that these two transactions constituted only a very minor portion of S.T.C.'s total tabulating business for these two years. Finally, it should again be noted that these two transactions have no relation whatsoever to the instant cause of action.

■ Sixth, defendant notes that S.T.C. has defended a lawsuit within Minnesota in this very Court. The defense of a lawsuit arising out of a completely separate transaction, however, cannot be considered to be a contact with Minnesota for purposes of exercising jurisdiction in this action.

■ Seventh, defendant emphasizes that a separate division of S.T.C., called the Task Force Division, operated an office in Minnesota for thirty-two months, from June 1968 to February, 1971, that three people were employed on a full-time basis at this office, and that a telephone, telephone listing, and bank account were maintained in Minnesota by this office. Although all of these observations are true, the maintenance of this office in Minnesota by S.T.C. is a relatively insignificant contact with Minnesota for purposes of the instant lawsuit. The business function of this Minnesota office was to provide temporary manpower services for businesses in need of short-term help. As stated, the office was operated by the Task Force Division of S.T.C., which is completely independent of and unrelated to the Stat-Tab Division. This Minnesota Task Force office had absolutely no connection with the instant cause of action. Also, although the figures have not been provided to the Court, it appears that the business conducted by this Minnesota office constituted only a very small portion of the total business conducted by S.T.C. during the period this office was in operation. Furthermore, by the time the instant action was commenced, this Task Force office had terminated its Minnesota operations and was no longer present within the State.

■ The final Minnesota contact alleged by defendant is S.T.C.'s license arrangement with a Minnesota resident. When S.T.C.'s Task Force Division terminated its operations in Minnesota, it licensed its mark, "Career Force," to a

Minnesota resident who is now operating a similar temporary manpower supply business in Minnesota under this name. Obviously this license arrangement does constitute a contact with Minnesota, but since it is only a single license arrangement with a single Minnesota resident and since it has no relation whatsoever to the instant cause of action nor even to the division of S.T.C. involved in the instant cause of action, there is very little substance to it and it is relatively insignificant for purposes of this proceeding.

■ From an analysis of these alleged contacts it seems clear to this Court that the contacts S.T.C. has had with Minnesota are not sufficient to subject it to personal jurisdiction in this State in this action. Using the approach suggested by the Court in *Aftanase, supra,* this Court has determined:

(1) S.T.C. has had only a minimal quantity of alleged contacts with Minnesota;

(2) Only one of these alleged contacts has any relation whatsoever to the instant cause of action;

(3) The nature and quality of the only alleged contact which does relate to the instant cause of action are such that this alleged contact is of very little significance; and

(4) The nature and quality of the other alleged contacts are such that even when aggregated they are of too little significance to justify the exercise of personal jurisdiction over S.T.C.

At this point it might be worthwhile to distinguish the facts of the instant case from those present in Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In that case the United States Supreme Court held that the State courts in Ohio could lawfully exercise personal jurisdiction over a foreign corporation which had conducted business activities in Ohio, even though the cause of action did not arise from the corporation's Ohio activities. Plaintiff, who was not a resident of Ohio, had sued defendant corporation in an Ohio State court seeking to recover dividends allegedly due her as a stockholder in the corporation as well as other damages allegedly suffered by her because of the corporation's failure to issue stock certificates to her. Defendant was a corporation organized under the laws of the Philippine Islands. Its mining properties were all located in the Philippines and it ordinarily conducted most of its business activities there. During the Second World War, however, defendant's activities in the Philippines were completely halted by the occupation of the Islands by the Japanese. Defendant's contacts with Ohio, which the Court deemed to be sufficient to subject it to personal jurisdiction in Ohio, were summarized by the Court as follows:

"During . . . [the war] the president, who was also the general manager and principal stockholder of the company, returned to his home in Clermont County, Ohio. There he maintained an office in which he conducted his personal affairs and did many things on behalf of the company. He kept there office files of the company. He carried on there correspondence relating to the business of the company and to its employees. He drew and distributed there salary checks on behalf of the company, both in his own favor as president and in favor of two company secretaries who worked there with him. He used and maintained in Clermont County, Ohio, two active bank accounts carrying substantial balances of company funds. A bank in Hamilton County, Ohio, acted as transfer agent for the stock of the company. Several directors' meetings were held at his office or home in Clermont County. From that office he supervised policies dealing with the rehabilitation of the cor-

poration's properties in the Philippines and he dispatched funds to cover purchases of machinery for such rehabilitation. Thus he carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter. While no mining properties in Ohio were owned or operated by the company, many of its wartime activities were directed from Ohio and were being given the personal attention of its president in that State at the time he was served with summons." 342 U.S. at 447–448, 72 S.Ct. at 419.

A comparison of these facts with the facts of the instant case reveals that S.T.C.'s contacts with Minnesota in the instant case are substantially less significant than were defendant's contacts with Ohio in *Perkins*. A major distinction between the two cases is that in *Perkins*, although the company's activities were significantly limited, virtually all of its wartime activities were carried on in Ohio; whereas, in the instant case only a relatively insignificant portion of S.T.C.'s business has ever been carried on in Minnesota. Also, in *Perkins* the operation of the defendant's business in Ohio was continuous and systematic and was being carried on at the time the president of the company was personally served with the summons; whereas, in the instant case the only portion of S.T.C.'s business which was ever conducted in a continuous and systematic manner in Minnesota—the Task Force office— had ceased to do business in Minnesota and had completely withdrawn from the State by the time the instant action was commenced. S.T.C. was served with process in Illinois and was in no way present in Minnesota at the time of service. The Court feels that these factual differences are critical and are more than sufficient to distinguish the facts of the instant case from those present in *Perkins*.

As previously noted, the United States Supreme Court in Hanson v. Denckla, *supra*, stated that:

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240.

In the instant case only three of the alleged contacts could possibly be considered as acts by which S.T.C. purposefully availed itself of the privilege of conducting activities within Minnesota:

(1) The processing of calculations for the two Minnesota residents;

(2) The operation of the Task Force office in Minneapolis; and

(3) The licensing of its mark "Career Force" to a Minnesota resident.

The infirmities (which were previously discussed) in these three alleged contacts, combined with the fact that none of them are related to the instant cause of action, make it clear to this Court that with respect to the transaction involved in this case, S.T.C. has not, in any significant way, invoked the benefits and protections of Minnesota's laws.

Also, it should be noted that at least one court had recognized that in order to exercise personal jurisdiction over a nonresident defendant, an action for breach of contract requires more contact with the forum State than does an action in tort. See Hunt v. Nevada State Bank, 285 Minn. 77, 110–111, 172 N.W.2d 292, 311 (1969), cert. denied, Burke v. Hunt, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). See also, Developments in the Law: State Court Jurisdiction, 73 Harv.L.Rev. 909, 926 (1960). This theory is consistent with

the proposition that the nature and quality of the alleged contacts are important considerations. Applying this theory to the facts of the instant case, but without deciding whether the wrong allegedly committed by S.T.C. could possibly be considered a "tort" for purposes of the Minnesota long-arm statute, it is clear that S.T.C.'s alleged wrong is more in the nature of a breach of contract than a tort. This action, therefore, requires greater contact with the forum State than would a case involving an ordinary tort; and this greater contact is not here present.

At this point the rather provocative summary of the United States Supreme Court decisions suggested by Professor Moore in 2 Moore's Federal Practice (2d ed.) Para. 4.25[5] should also be noted. Professor Moore states:

"Based as they are on notions of fairness and reasonableness, the Supreme Court decisions do not permit a simple generalization of the rule pertaining to in personam jurisdiction over foreign corporations. If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test." [Footnotes omitted.]

It is this Court's opinion that the instant action falls into the last category. S.T.C. has had only a very mini-mum of contacts with Minnesota, and the cause of action did not arise out of any of these contacts. Thus, an examination of S.T.C.'s alleged contacts with Minnesota has convinced this Court that it would not be fair and reasonable to exercise personal jurisdiction over S.T.C. in this action. Before disposing of this matter, however, the other two factors mentioned by the Court in *Aftanase*—interest of the forum State and convenience—should also be discussed.

With regard to the interest of the forum State, since defendant was not acting as a resident of Minnesota in its dealings with S.T.C., it appears to this Court that Minnesota has very little interest in the third party complaint aspect of the instant action. As previously discussed, although defendant might be considered to be a resident of Minnesota for some purposes, with regard to the activities out of which the third party complaint arose, defendant was not acting as a Minnesota resident. In its dealings with S.T.C. defendant may have been acting as a resident of California, Illinois or New York but not of Minnesota. Defendant's Minnesota office had no contact whatsoever with S.T.C. All of the negotiations, arrangements, transactions and exchanges between defendant and S.T.C. were accomplished by one of defendant's non-Minnesota offices. Thus, Minnesota's interest in providing a forum for defendant in the instant case is quite small. Furthermore, the inclusion of defendant's third party action would undoubtedly complicate and somewhat confuse the trial between plaintiff and defendant, a result which should be avoided if possible since plaintiff is the only party involved in this action for whom Minnesota has any real interest in providing a forum.

With regard to the factor of convenience, at first blush it would seem that the factor of convenience would be better served by a trial of all of these issues at one time in the same tribunal.

On the other hand, however, the unavoidable complication of the trial between plaintiff and defendant by inclusion of the third party action mitigates against this initial conclusion. Also, with regard to defendant's convenience, it would not be overly burdensome for defendant to try this third party action in another forum. We are not here dealing with an unsophisticated local individual who has been pressured or importuned into entering an improvident transaction. We are not confronted with a relatively defenseless holder of a small claim who is in effect denied justice by being required to travel to a foreign jurisdiction. We have, instead, a nonresident corporate third party plaintiff which can, without substantial inconvenience, litigate its claims in a different tribunal. Furthermore, if defendant prevails against plaintiff, there will be no need for its action against S. T.C. If such a situation were to result, the factor of convenience undoubtedly would have been better served by exclusion of the third party action from the trial between plaintiff and defendant. Finally, it appears that all of the witnesses, documents and other evidence pertaining to the dispute between defendant and S.T.C. are located in either Chicago or New York. With respect to location of witnesses and evidence, therefore, it is obvious that Chicago or New York would be a more convenient forum for the trial of this dispute than would Minneapolis. Thus, for purposes of the instant motion, it seems that the factor of convenience does not weigh heavily in favor of either party.

Therefore, after consideration of all of the factors outlined above, this Court has concluded that an exercise of personal jurisdiction over S.T.C. in this action would violate traditional notions of fair play and substantial justice, and thus due process of law. S.T.C's motion to quash service of process must therefore be granted.

It is so ordered.