311 So.2d 218 (1975)
SECURITY FIRST NATIONAL BANK
v.
Peter D. TATTERSALL.
No. 55868.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*219 Harry A. Hammill, Gold, Hall, Hammill & Little, Alexandria, Clifton S. Carl, Carl & Roussel, New Orleans, for relator-National American Bank.
Gist, Methvin & Trimble, John W. Munsterman, Alexandria, for plaintiff-respondent.
Chris J. Roy, Gravel, Roy & Burnes, Alexandria, for defendant-respondent.
SUMMERS, Justice.
During July and August 1974 Peter D. Tattersall purchased six thoroughbred horses at public auctions in Kentucky and New York. They were shipped directly to Rosalie Plantation near Alexandria in Rapides Parish. The funds for the purchase of these horses had been advanced to Tattersall by the National American Bank in New Orleans with whom Tattersall had been doing business for about three years in similar transactions.
Some time after, upon receipt from the seller of the registration statements or certificates issued by The Jockey Club of New York for each horse, as was his practice, Tattersall sent the certificates to the National American Bank in New Orleans. These were to be held in connection with his loan with the bank, he having already been advanced the money and having executed a chattel mortgage and notes aggregating $475,000 covering this and other obligations.
On January 15, 1975 National American Bank instituted suit against Tattersall in Orleans Parish representing that Tattersall was indebted to it in the sum of $475,000 with interest, attorneys' fees and costs represented by a promissory note and pledge agreement, both dated September 18, 1974, and secured by a pledge of four collateral chattel mortgage notes, 29 shares of Assagai (a thoroughbred stallion) Syndicate, six original Jockey Club certificates on horses foaled in 1973, and a management agreement and assignment of proceeds covering the stallion Assagai.
*220 One collateral chattel mortgage recorded in Orleans Parish, dated September 18, 1974, affected four of the six horses acquired by Tattersall at the July and August 1974 public sales already mentioned. In addition, the petition alleged that Tattersall had pledged all certificates for these six horses to secure the indebtedness to National American Bank.
The bank prayed for judgment against Tattersall in the sum of $475,000 with interest, attorneys' fees and costs and for the recognition of its chattel mortgages and pledge. The petition asked that the property mortgaged and pledged be sold by the Sheriff of Orleans for the satisfaction of Tattersall's obligation to the bank.
On January 21, 1975 the Security First National Bank of Alexandria instituted suit in Rapides Parish, alleging that Tattersall was indebted to it in the sum of $87,340.63 represented by a promissory note dated December 17, 1974, with interest, attorneys' fees and costs; and for the additional amount of $2,500, plus interest, attorneys' fees and costs represented by a promissory note dated January 20, 1975. To secure these notes, the Security First National Bank alleged that Tattersall pledged as collateral security, in addition to other chattel mortgages and notes, a chattel mortgage note in the amount of $100,000 dated January 3, 1975, secured by a chattel mortgage affecting the six thoroughbred horses acquired by Tattersall during July and August 1974, these horses being situated on Tattersall's farm in Rapides Parish. Security First National Bank prayed for judgment against Tattersall in the sums of $87,340.63 and $2,500 plus interest, attorneys' fees and costs and for recognition and of its chattel mortgages.
To this suit Tattersall filed an answer on January 22, 1975, in which he admitted the indebtedness and asked that judgment be rendered accordingly. Judgment was rendered on that same day in favor of Security First National Bank as prayed for.
On January 24, 1975 the Security First National Bank moved for a hearing, to be held on February 3, 1975, "to determine whether certain registration certificates or papers issued by The Jockey Club of New York should not be delivered to the sheriff", that said certificates be produced in open court at the time of the hearing and that a subpoena duces tecum be directed to Tattersall, the National American Bank of New Orleans and Louis J. Roussel III to produce the certificates on the six horses described in its mortgage. On the ex parte motion, the subpoena duces tecum was issued. Roussel was later, by stipulation, released from the suit in his individual capacity; but, as president of National American Bank, he was considered responsible for the production of the certificates in the Bank's possession.
Security First National Bank also filed a separate motion on that same day, alleging that a writ of fieri facias had issued to seize the six horses, the seizure had been made and the sale at public auction was set for 10 a.m. on February 12, 1975 in Alexandria. The motion alleged that it was necessary for the certificates issued by The Jockey Club of New York to be in the possession of the sheriff at the public sale to be delivered to the purchaser with the horses; and that the National American Bank, who had possession of the certificates, and Tattersall the owner, be ordered to produce and tender the certificates to the sheriff. An order to show cause on February 3, 1975 was then issued.
To these motions National American Bank filed an exception to the venue, alleging that it transacted its general business in the city of New Orleans and that actions and proceedings against a national banking association could only be maintained in the district court of the United States held within the district in which such association may be established or in any state, parish or municipal court in the parish or city in which such association is located having jurisdiction in similar cases.
The motions and exception were heard on February 3 and 4, and on February 5 the trial judge overruled the exception to *221 the venue and ordered National American bank to produce the certificates in open court on February 10, 1975 and show cause why it should not be compelled to deliver the certificates to the Sheriff of Rapides Parish.
National American Bank applied to the Third Circuit for certiorari and a stay order. These were denied. Application was then made to this Court where a stay of execution of all orders was granted, except that the hearing scheduled for February 10 was allowed to proceed.
On February 10, National American Bank filed an exception to the use of summary proceedings which was denied. It then filed a motion to quash the subpoena duces tecum which was also denied. Then, for failure of National American Bank to comply with the order to produce the certificates, the president of National American Bank was found to be in contempt of court and a writ of attachment was issued for his appearance. The trial judge granted a stay to permit National American Bank to apply to this Court for review. We granted writs under our supervisory jurisdiction.
Section 94, of Title 12 of the United States Code, relied upon by National American Bank, is a special federal statute concerning suits against national banks. It provides:
"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."
Although the language of the statute is permissive, the jurisprudence interpreting and applying its provisions has given it a strict and narrow construction, making only one exception. Helco, Inc. v. First National City Bank, 470 F.2d 883 (3rd Cir. 1972); Moreland v. Rucker Pharmacal Company, 59 F.R.D. 537 (W.D.La.1973). The exception is recognized in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). There the Court announced that the statute related to transitory actions only, and not to such actions as are by law local in their character. State law was said to determine whether the action was local or transitory. In that case the Court was concerned with ranking privileges on real estate in Lafourche Parish, which by our Code of Practice was required to be litigated where the property was situated, a clear case of a local action. The Court found no evidence in the act of an intention on the part of Congress to exempt banks from the ordinary rules of law affecting the locality of actions founded on local things. In its opinion the Court said, "Local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded are situated."
In the case at bar the trial judge did not consider National American Bank as a party to this suit. In his opinion it was only being ordered to produce the certificates it held, either in pledge or safekeeping, and therefore it was not a party as contemplated by Section 94 of Title 12 of the United States Code. This finding, together with his determination that the suit was local in nature, formed the basis for overruling the exception to the venue.
The action being reviewed commenced in an after judgment motion styled "Motion to obtain order to require delivery of registration papers to sheriff." The pleading filed by Security First National Bank in Rapides Parish required service on National American Bank in Orleans Parish. The prayer was consonant with the style of the pleading. It sought positive relief against the National American Bank requiring delivery of the certificates which National American Bank considered to be collateral to loans upon which it had itself sued in Orleans Parish.
*222 In our opinion Section 94 does not require that the National American Bank be a party to the suit in the sense that they be either plaintiff or defendant, or even intervenor, in order to avail itself of the Section's provisions. It suffices under the terms of Section 94 that it be an action or "proceedings against" a national bank. And in our view this is such a proceeding.
The National American Bank is commanded to produce the certificates in its possession on which it claims privileges by virtue of a pledge. To surrender possession of these certificates under the order will result in the destruction of the pledge and the consequent loss of the privilege it affords. La.Civil Code arts. 3154-3175. The right to the possession and control of the certificates is therefore in contest. The posture of the case will require the determination of that right to possession; and, consequently, in that respect, the proceedings are against the National American Bank.
Undoubtedly the effect of the orders issued calling upon the National American Bank to appear and show cause why it should not surrender possession of the certificates is as much an action or proceeding with respect to its rights in those certificates as though it had been sued as defendant in an ordinary action to defend the same rights. Nothing in the statute implies that it is restricted to any particular type of proceeding, ordinary, summary, ancillary or otherwise. As we understand the law, its purpose is to prevent inconvenience and interruptions to the business of nationally-chartered banks arising from suits away from their established places of business. It is a purpose which is in keeping with the restrictions under which these banks operate.
It is worthy of note also that the chattel mortgage securing the claim of Security First National Bank in Alexandria makes no mention of these certificates. Because the certificates are not described, and because of the strict requirements of our law requiring a full description of the property mortgaged, the inference is that the certificates are not the subject of the foreclosure proceedings instituted by Security First National Bank. La.R.S. 9:5352.
The proceeding demanding delivery of the certificates claimed by National American Bank to be in its possession by virtue of a pledge is a transitory action. A transitory action may be brought in any court of general jurisdiction in any district wherein defendant can be found and served with process, whereas in a local action the plaintiff must litigate his rights in the court designated, if not statutorily required to do otherwise. Accordingly, the action must be brought in the county or district in which the subject matter lies or where the cause of action arose. Moreland v. Rucker Pharmacal Company, Inc., 50 F.R.D. 537 (W.D.La.1973); 92 C.J.S. Venue § 8.
A problem arises in the need to translate these common law terms into Louisiana practice. In this State actions are referred to as personal, real and mixed:
"A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.
"A real action is one brought to enforce rights in, to, or upon immovable property.
"A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof." La.Code Civ.P. art. 422.
Here we are concerned with certificates issued on each of the six thoroughbred horses by The Jockey Club of New York. It may be understood from a scanty record on the subject that these certificates are required by the owner of the horse to establish the right of the owner to race the horse on some race tracks in the United States. No other facts explaining or describing *223 the certificates appear in the record. Such a record makes classifying the certificates difficult. However, since the certificates pertain to and confer rights in horses which are movables (the right to race a horse at certain tracks), it is safe to classify them as incorporeal movables. They have not the character of immovables. La.Civil Code arts. 460, 472-480. See also La.R.S. 9:4321-4323.
Such a classification removes the action involving these certificates from the definition of real or mixed actions, for no immovable is involved. The action, then, falls within the only remaining class. It is a personal action. As such it must be brought in the parish where the bank is "established". La.Code Civ.P. art. 42(2), (4); 12 U.S.C.A. § 94. The action therefore, properly falls within the meaning of a transitory action.
For the reasons assigned, the rulings of the trial court are reversed and the exception of venue to the rule to show cause is sustained; and, for that reason, the motion to quash the subpoena duces tecum is overruled.