FIRST NATIONAL BANK OF MINNE-APOLIS, a National Banking Association, Plaintiff,

v.

R. Harold WHITE et al., Defendants.

R. Harold WHITE et al., Third-Party Plaintiffs,

v.

CENTRAL AG FINANCE CORPORA-TION, a Delaware Corporation, Third-Party Defendant.

No. 4–76–Civ. 109.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 8, 1976.

Stuart W. Rider, Jr., and Steven J. Kluz, Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for plaintiff.

G. William Smith, Dudley & Smith, St. Paul, Minn., Durrell Nielsen, Charles C. Brown, Morris & Nielsen, Salt Lake City, Utah, for defendants.

Gerald D. Chiss and Michael G. Beland, Rusnak, Deutsch & Gilbert, Ltd., Chicago, Ill., Harold D. Field and George F. McGunnigle, Jr., Leonard, Street & Deinard, Minneapolis, Minn., for third-party defendant.

## MEMORANDUM ORDER

LARSON, District Judge.

Plaintiff First National Bank is a federally chartered bank corporation with its offices and facilities in Minnesota. It comes into this Court seeking recovery on a promissory note signed by defendant United Cattle Partnership, a Utah limited partnership in which defendant General Livestock Company is the sole general partner; the individual defendants are all general partners in General Livestock. As of January 1976 United defaulted on its note and First National sold United's collateral, a herd of cattle. It here requests a judgment for the outstanding balance on the note and on various other notes made out to the partnership by individual partners and given as collateral.

Central Ag Finance Corporation is a Delaware corporation whose main offices are in Chicago. It does not routinely conduct business in Minnesota and has made only one loan to a Minnesota resident, in a transaction totally unrelated to this action. Some time prior to the fall of 1975, Central Ag assigned its loan portfolio to Central National Bank, also located in Chicago. Central Ag had made a loan to Bountiful Cattle Co., a Minnesota limited partnership whose general partners were the individuals named as defendants here. Bountiful had also offered cattle as collateral, and its cattle were commingled with those in which First National held a security interest. The cattle apparently were being held on ranches in Arizona and Nevada.

In October 1975 Central National Bank contacted First National to propose a joint venture in which representatives of Central National would conduct a roundup and take over management of the herd, which the creditors believed was being allowed to deteriorate. Central would see to it that the cattle were separated by brand and would submit a bill to First National for its share of the expenses of roundup and maintenance. The arrangement is evidenced by a single letter submitted to this Court by counsel for third party defendant Central Ag, and it appears that negotiations were

minimal, each of the banks executing the letter as presented.

The roundup was conducted in the southwest, and First National paid its share of the expenses. Defendants have impleaded Central Ag, claiming mismanagement of the herd so as to bring in a lower price than warranted by the market at the time of sale. They have also counterclaimed against First National on the same grounds.

Defendants have moved to dismiss for lack of personal jurisdiction over the individuals in the partnership or, in the alternative, to transfer this case under 28 U.S.C. § 1404(a) to the District of Utah. Third party defendant moves to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted. The motions have been argued orally and briefed extensively, and the parties are currently engaged in a battle for the last word in letters to this Court. The Court's last word on this matter is to (1) grant Central Ag's motion to dismiss it as a third party defendant and (2) transfer the case to the District of Utah.

## I. THE THIRD PARTY DEFENDANT—

■ Jurisdiction over Central Ag must be had, if it is at all available, under the Minnesota longarm statute, M.S.A. § 543.-19; Fed.Rules of Civ.Proced. 4(e). The Minnesota Supreme Court has declared that the longarm statutes will be construed to afford the broadest jurisdiction possible within the limits of due process, *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969), and the Federal courts have adopted this expansive reading of the statutes, *B & J Manufacturing Co. v. Solar Industries, Inc.*, 483 F.2d 594 (8th Cir. 1973). Consequently, this District Court cannot have jurisdiction over a nonresident defendant whose contacts with the forum have been so minimal as to fall short of the standard established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("traditional notions of fair play and substantial justice" must be satisfied), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)

(defendant must have entered the forum with business purposes sufficient to invoke "the benefits and protections of its laws"). The Eighth Circuit has determined that satisfaction of the due process standard may be measured by examining the nature and quality of defendants' contacts with the forum State, quantity of contacts, source and connection of the cause of action with those contacts, and, to a lesser degree, interest of the forum State and convenience. *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965). Measured thus, the position and conduct of third party defendant Central Ag do not constitute sufficient contact with this forum to satisfy the due process standard.

■ Central Ag's only contacts with this forum have been one unrelated loan transaction and the written agreement with First National, which was mailed into the State. There are no allegations and no evidence of negotiations or other communications between the banks, aside from the letter and eventual payment. Most of Central Ag's performance took place in Nevada, Arizona, and possibly Illinois. This fact situation falls somewhere between that of *Independent School District No. 454, Fairmont, Minn. v. Marshall & Stevens Co.*, 337 F.Supp. 1278 (D.Minn.1971) (contract between nonresident defendant and nonresident third party defendant, negotiated and largely performed outside the forum, held to be insufficient contacts), and *Kornfuehrer v. Philadelphia Bindery, Inc.*, 240 F.Supp. 157 (D.Minn.1965) (making a contract with a Minnesota resident after considerable negotiation by mail into the State, held to be sufficient contact). *Kornfuehrer, supra,* involved only the Minnesota single-act longarm statute, which was by its terms enacted in order to protect Minnesota residents who made contracts with nonresident corporations. M.S.A. § 303.13; *Kornfuehrer, supra,* at 158. These considerations are not applicable here, where the third party plaintiffs seeking to invoke jurisdiction under the Minnesota general longarm statute are nonresidents whose interest in the contract between the banks is peripheral at most. Central Ag's contacts with the State of

Minnesota are not sufficient to warrant jurisdiction unless there are other factors in the case that would tend to establish a stronger connection with this forum.

The Court has already noted the small quantity of Central Ag's contacts with the State. It also finds the interest of this forum in resolving a dispute between two nonresidents, engendered by a contract to which only one of them was a party, to be negligible. *See Independent School District No. 454, supra,* at 1288; *Mid-Continent Freight Line v. Highway Trailer Industry,* 291 Minn. 251, 190 N.W.2d 670 (1971). While the convenience of the third party plaintiffs might be served by hearing their claims here in the forum in which they are already in litigation, Central Ag's convenience is not served at all, and the third party plaintiffs have argued at length that the suit should be heard in Utah; this forum is actually convenient only for First National Bank, whose presence in the suit is not at issue here.

■ Third party plaintiffs would argue that Central Ag's contacts with this State, while minimal, are sufficiently connected to the cause of action to warrant jurisdiction. M.S.A. § 543.19(3). *See, e. g., Northwestern National Bank v. Kratt,* 303 Minn. 256, 226 N.W.2d 910 (1975) (nonresident guarantor of a mortgage was held subject to jurisdiction in an action on the guaranty when most of his contact with the State was only remotely connected to his signing the guaranty). They also claim that First National and Central Ag formed a partnership for the limited purpose of gathering the cattle, that they are thus agents of each other as to all activities concerning the note and the cattle, and that proper service of process on one partner subjects the association, and all of its members to the extent of their interest in the business, to jurisdiction in a suit concerning partnership business. This last assertion is correct as to both joint ventures and partnerships, M.S.A. § 540.15; J. Crane and A. Bromberg, *Partnership* §§ 59–62 (West, 1968), but the third party plaintiffs are mistaken in their characterization of the scope and nature of the relationship

between the two banks, and are therefore mistaken in any claim that Central Ag is subject to jurisdiction because of any connection either between its contacts and the cause of action or between itself and First National.

■ Central Ag and First National formed an association for the sole purpose of gathering the cattle that constituted collateral for loans made to United and Bountiful. In essence, Central Ag performed services for First National and acted as its agent in rounding up and selling the cattle that carried United's brand. First National did not transact any business with third parties, within or without the State, on behalf of Central Ag or their association. When First National paid Central Ag for the expenses of collection, it was paying off its agent, and that transaction, while necessitated by United's liability on the promissory note, did not involve United in any way. First National then charged its expenses against United in the normal course of dealing as a creditor. If those charges were inappropriate, United's only recourse is against First National—and it has in fact counterclaimed here.

■ This characterization of the relationship between the banks has considerable bearing on the issue of personal jurisdiction. First, Central Ag's few contacts with this forum do not have a sufficient connection with the third party plaintiffs' cause of action to warrant jurisdiction; unlike the activities of defendant in *Kratt, supra,* Central Ag's performance, insofar as it affects the third party plaintiffs, did not take place in Minnesota at all, and its transactions within this forum were only with First National. Secondly, the activities of a partner or coventurer can subject his associates in the venture to jurisdiction in the forum only when he has acted within the forum as an agent of the business, to effect its purposes. *See S. S. Kresge Co. v. Kamei-Autokomfort,* 363 F.Supp. 257 at 260 (D.Minn. 1973). First National did not act as Central Ag's agent in Minnesota and did not transact any business on its behalf; therefore proper service on First National can have

**1336**

no effect on jurisdiction over Central Ag. Third, the actions of an agent acting for a disclosed principal bind only the principal and not the agent, subjecting only the principal to jurisdiction on the basis of contacts with the forum. *Washington Scientific Industries, Inc. v. American Safeguard Corp.,* 308 F.Supp. 736 at 738 (D.Minn.1970). Central Ag's activities within this forum were in the nature of an agency, and First National did not perform any acts, in this forum or elsewhere, as an agent of Central Ag.

Accordingly, Central Ag's motion to dismiss the third party action for lack of jurisdiction is granted, and the Court does not reach the question of whether the third party plaintiffs assert a claim legitimately against Central Ag.

II. *MOTION OF DEFENDANTS FOR DISMISSAL OR CHANGE OF VENUE—*

The individual defendants and United Cattle Partnership move for dismissal on grounds of lack of personal jurisdiction or, in the alternative, for a change of venue to the District of Utah. The first motion is denied as to all defendants except Tad Bingham and Roland Palmer. As to defendants then remaining, the case will be transferred to the District of Utah.

■ From affidavits submitted by defendants and from uncontroverted allegations made by plaintiffs, it appears that defendants White, Mower, and Jay Bingham are properly within the jurisdiction of this Court. All of them made trips to Minnesota during which they dealt with the loans in question here. The negotiations were effected through telephone calls to plaintiff in Minnesota and the money was used by defendants by means of drafts on a Minnesota bank account that had been established to receive the proceeds. The loan was granted only after defendants had sent considerable amounts of paperwork into Minnesota. Essentially, the transaction was focused in Minnesota, and those defendants who directly involved themselves are subject to jurisdiction in this State.

*See Northwestern National Bank v. Kratt, supra; Hunt v. Nevada State Bank, supra.*

■ According to M.S.A. § 540.15, incorporated with its common law gloss into Federal procedure through Fed.Rule Civ. Proced. 4(d)(7), proper service on one member of a partnership is sufficient to give jurisdiction over the partnership itself, so that the partnership assets will be available to satisfy a judgment. Because service on defendants White, Mower, and Jay Bingham brought them personally within the jurisdiction of this Court, and each was a partner in General Livestock, that partnership is also considered to be properly served; with its general partner General Livestock served *in personam,* United Cattle is also properly before this Court.

■ There is no evidence that either Tad Bingham or Roland Palmer ever made any visits to Minnesota, in connection with this loan or otherwise, and both deny such contacts in affidavits submitted with this motion. Their only connection with this forum, then, is the rather tenuous one suggested by their status as partners in an enterprise that took a loan in Minnesota.

The question arising here, one of first impression in this forum, is whether partners who could not properly be served under the longarm statute may still be subject to jurisdiction *in personam* if the partnership in which they are members is within the court's jurisdiction. This issue is not a mere technical quibble, for, while even a partner who is not an individual party will be personally liable for his share of the partnership debts, including judgment debts (see Uniform Partnership Act, § 15 [Utah adoption, 1921]), it is a different and more serious matter to be directly within the power of a court to order immediate attachment of one's property or to cite one for contempt.

In *Ford Motor Company v. Sylte,* 188 Minn. 578, 248 N.W. 55 (1933), the Minnesota Supreme Court decided that proper personal service on a partner subjects him (and his property) individually, as well as his partnership, to the jurisdiction of the court. The court did not deal directly with the

point at issue here, but its handling of the questions before it implied that it did not consider a partner to be individually within the power of the court unless he were properly served. Plaintiff cites a New York case, *Esser v. Cantor*, 55 Misc.2d 235, 284 N.Y.S.2d 914, aff'd per cur. 55 Misc.2d 720, 286 N.Y.S.2d 389 (1967), in support of its assertion that the service on a partnership brings all the partners individually within the Court's jurisdiction; in urging that the Court adopt this approach, plaintiff acknowledges that the matter is one of discretionary interpretation of constitutional due process limitations on jurisdiction. This Court does not believe that jurisdiction is proper when the individual in question has had no personal contacts with the State, particularly when plaintiff's interest in bringing him to the forum may be satisfied simply by establishing liability of the partnership in which he is a member. Accordingly, individual defendants Tad Bingham and Roland Palmer are dismissed from this action for lack of personal jurisdiction.

This brings us to defendants' motion to transfer this case under 28 U.S.C. § 1404(a) to the district of Utah. This statute provides that a change of venue to another forum where the case could have been brought, may be had when it suits the convenience of the parties, the convenience of witnesses, and the interests of justice. Under it, the Court does not afford near-controlling weight to plaintiff's choice of forum as was done under the old *forum non conveniens* doctrine, but the moving party still has the burden of establishing that the transfer should be granted. *Medtronic, Inc. v. American Optical Corporation*, 337 F.Supp. 490 at 495, 497 (D.Minn.1971). In this case, the force of numbers would weigh on the side of transfer, for defendants and witnesses who are permanently located in or near the transferee forum far outnumber the plaintiff and any Minnesota-based witnesses (indeed, plaintiff does not claim that there will be any significant number of local witnesses). The original financial transaction involved is not so complex that large quantities of locally stored records would be needed for trial.

The third evaluative factor provided in 28 U.S.C. § 1404(a), "the interest of justice," is perhaps the most important, *Medtronic, Inc., supra; I-T-E Circuit Breaker Co. v. Regan*, 348 F.2d 403 at 405 (8th Cir. 1965), and allows the Court to examine the circumstances in a given case in order to achieve a just result. Factors which may be considered include relative familiarity of the two courts with the law to be applied, *Van Dusen v. Barrack*, 376 U.S. 612 at 643–45, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); relative ability of the parties to bear the expense of litigating in a distant forum, *Aamco Automatic Transmissions, Inc. v. Bosemer*, 374 F.Supp. 754 at 757 (E.D.Pa.1974); comparative probabilities of delay and concomitant expense because of overloaded dockets, *Pfizer, Inc. v. Lord*, 447 F.2d 122 at 125 (2d Cir. 1971); *Land O'Lakes, Inc. v. L. D. Schreiber Cheese Co., Inc.*, No. 4–75–Civil 520 (D.Minn., Memorandum Order April 14, 1976).

The parties here agree that by the terms of the promissory note the law of Utah is to apply in this case, and this Court has already recognized that even where Uniform Laws (such as the Uniform Partnership Act) apply, the law of Utah may require a special interpretation, *First National Bank v. White, et al.*, No. 4–76–Civil 109 (D.Minn., Memorandum Order, Aug. 2, 1976); a Utah court is best qualified to deal with this body of law. Defendants claim, and plaintiff does not dispute, that the expense of litigation is much more burdensome for them than for plaintiff, and that this case can come to trial considerably earlier in Utah than in this district. Defendants have convinced this Court that the balance of convenience weighs sufficiently in their favor to warrant a transfer of this case.

Plaintiff First National contends that regardless of the outcome under 28 U.S.C. § 1404(a), this case cannot be transferred to Utah because the counterclaim asserted by defendants makes the case a proceeding "against" a bank that mandates venue in the bank's home district under 12 U.S.C. § 94. While the Court agrees that in

an ordinary suit against a bank the special venue statute would apply even in contravention of all considerations under 28 U.S.C. § 1404(a), *Radzanower v. Touche, Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), this is not an ordinary case "against" a bank. It is a proceeding in which the defendants were forced to assert their compulsory counterclaim or lose it forever and thereby, under the Bank's rationale, become trapped by the Bank's choice of forum.

No court has yet considered the effect of 12 U.S.C. § 94 in a counterclaim situation, but several have dealt with special venue claims where the bank is a third party defendant, and they have disagreed as to the effect of the statute. In two cases the courts have dismissed the third party claims because the main case was not venued in the bank's home district. *Southeast Guaranty Trust Co., Ltd. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill.1973); *Swiss Israel Trade Bank v. Mobley,* 319 F.Supp. 374 (S.D.Ga.1970). In neither of these cases did the court offer any reasoning; each simply concluded that the bank was involved in a proceeding "against" it and could invoke the statute. In *Security First National Bank v. Tattersall,* 311 So.2d 218 (S.Ct.La.1975), an order to produce registration certificates held as collateral on a loan by the bank, was held to be a proceeding "against" the bank so as to invoke the venue privilege; the court saw this suit as a collateral, separately evaluated matter rather than a possibly ancillary one. In *Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946 (S.D.N.Y.1975), however, the court refused to dismiss a third party complaint against a bank where the bank claimed that the special venue statute mandated dismissal from a case proceeding in the "wrong" venue.

The court in *Odette, supra,* declared that where a claim is ancillary to the main claim so as to eliminate objections based on subject matter jurisdiction, an area in which the Federal courts are most sensitive to the limits on their power as a constitutional matter, third parties should not be able to object to venue, which is merely a statutory allocation of caseload on the basis of presumed convenience. See 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1445 (West, 1971); *United States v. Acord,* 209 F.2d 709 at 714 (10th Cir. 1954). A compulsory counterclaim also invokes the ancillary subject matter jurisdiction of the court, 6 Wright & Miller, *supra,* § 1414, and the venue considerations raised by the main claim, as in the case of a third party claim, should control. Traditionally a plaintiff by choosing his forum is considered to have waived venue objections when a counterclaim is asserted, *Exchange National Bank of Chicago v. Abramson,* 45 F.R.D. 97 (D.Minn.1968), and while waiver is not at issue here, the same principle should apply: plaintiff should not be allowed to claim a special privilege in the instance of the counterclaim, to which it was not entitled on the main claim; defendants should not be put to a Hobson's choice between asserting their compulsory counterclaim or challenging venue, when the nature of the original action was such that they could have done both. *See Dragor Shipping Corp. v. Union Tank Car Co.,* 378 F.2d 241 at 244 (9th Cir. 1967).

The bank's reliance on the special venue statute is particularly inappropriate given that the statute was enacted for the convenience of banks in a different era, before the development of photocopying and computerized record-keeping eliminated the necessity of disrupting business in order to produce bank records for trial in a distant forum. *See Helco, Inc. v. First National City Bank,* 333 F.Supp. 1289 at 1292–93 (D.V.I.1971), *rev'd on other grounds* 470 F.2d 883 (3d Cir. 1972). While the Supreme Court has determined that repeal or modification should be left to Congress, *Mercantile National Bank at Dallas v. Langdeau,* 371 U.S. 555 at 563, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), and Congress has not responded, this Court does not find that it must extend application of an archaic statute to yet another kind of case. The Bank may not oppose the change of venue on the basis of its special privilege under 12 U.S.C. § 94.

IT IS ORDERED:

1. That the motion of third party defendant Central Ag Finance Corporation for dismissal on grounds of lack of personal jurisdiction be, and hereby is, granted.

2. That the motion of defendants White, et al, for dismissal for lack of personal jurisdiction be, and hereby is, granted as to defendants Tad Bingham and Roland Palmer. As to the remaining defendants, the motion is denied.

3. That the motion of defendants White, et al, to transfer this case to the District of Utah, Northern Division, be, and hereby is, granted.