Maynard B. LONG and Walter W. Long, Plaintiffs,

v.

Carl B. BALDT and John J. DeLuca, Defendants.

Civ. A. No. 77–2415.

United States District Court, D. South Carolina, Columbia Division.

Jan. 25, 1979.

T. Alexander Beard, Camden, S. C., for plaintiffs.

Sherwood M. Cleveland, Columbia, S. C., William M. Wilson, Camden, S. C., for defendants.

## ORDER

BLATT, District Judge.

This diversity action, charging multifaceted trust mismanagement, was commenced on December 14, 1977, by the filing of the summons and complaint. The defendant trustees moved on January 3, 1978, to dismiss for lack of personal jurisdiction, and, thereafter, extensive jurisdictional discovery was undertaken. After a preliminary hearing on May 9, 1978, the court heard oral argument on the motion to dismiss on November 15, 1978, following which the court directed the defendants to provide certain additional information concerning the activities of the defendants within South Carolina. This information was received on January 6, 1979, and the motion is now ripe for determination.

## THE CASE

Plaintiffs are presently the income beneficiaries of a Delaware trust set up in 1965 by Mary W. Dupont for her children— (plaintiffs herein)—said trust being primarily funded by (1) income from stock in the Wooten Corporation, and, (2) payments on a

mortgage on South Carolina realty held by the trust. The defendant trustees, by virtue of the transfer to the trust of Wooten Corporation stock, became controlling stockholders in that corporation and are officers and members of the Board of Directors and the Executive Committee of that corporation. Plaintiffs allege that the defendants have mismanaged the trust in many respects, the most important being:

1. Permitting the Wooten Corporation to become insolvent—(thereby "gutting" the trust)—by failing to exercise their powers as controlling stockholders-directors-officers to prevent the corporation president from misusing corporate funds.

2. Failing to require the Wooten Corporation to redeem quarterly a portion of the trust's stock as provided by the corporate stock issue, thereby depriving the trust of income.

3. Loaning trust funds to the Wooten Corporation when the trustees, as directors of the Wooten Corporation, knew or should have known that there was no reasonable prospect that the Wooten Corporation could ever repay the sums advanced.

4. Purchasing for the trust a note and mortgage of the Wooten Corporation on real property situated in South Carolina at a time when the corporation was in default on the note payments and had no reasonable prospect of repaying the loan.

## THE MOTION

For the present, the court is not concerned with the merits of the plaintiffs' case; rather the court must deal with defendants' contention that this court has no personal jurisdiction over them because:

1. There is no trust property located in South Carolina.

2. If there is trust property in South Carolina, the assertion of jurisdiction over the defendants based solely on the presence of trust property in South Carolina is unconstitutional.

3. The defendants do not have the requisite "minimum contacts" with South Carolina.

At the outset, the court notes that while plaintiffs originally asserted South Carolina Code § 15–9–440 (1976)—(presence of trust property in South Carolina)—as their sole basis of personal jurisdiction over the defendants, they have, after inquiry by the court at oral argument, also urged the propriety of personal jurisdiction under South Carolina Code § 36–2–803 (1976)—(personal jurisdiction based upon conduct).[1] The court will examine these separate but related bases of jurisdiction below.

Code Section 15–9–440(3) provides:

*"Service on nonresident trustee when there is no resident trustee.*—When there is no resident trustee, the nonresident trustee of an inter vivos trust shall be deemed to have consented to the service of any summons, notice, or other legal process in connection with any proceeding in the courts of this State involving such trust, directly or indirectly, when served upon the Secretary of State, when the trust was created under the laws of this State or, in the case of a foreign trust, when part of the trust property is situated in this State."

As the section makes clear, the critical non-constitutional inquiry in applying this section to a foreign trust is to determine if "part of the trust property is situated in this State." Of course, it is also essential that assertion of jurisdiction on this basis not offend traditional notions of fair play and substantial justice.[2] *Interna-*

---

1. In accordance with the policy enunciated in *Fort Sumter Tours v. Andrus,* 564 F.2d 1119, 1123 n. 4 (4th Cir. 1977) relying on *Blue v. Craig,* 505 F.2d 830, 844 (4th Cir. 1974)—(subject matter jurisdiction)—this court would not deprive the plaintiffs of an opportunity to argue the existence of personal jurisdiction on a basis different from that stated in their complaint. If

necessary, the court would have given plaintiffs the opportunity to amend their complaint to include this additional basis since, after the court raised the issue, both sides fully briefed and argued the merits of such jurisdiction.

2. The trustees have not argued that they failed to receive reasonable notice of this suit through the procedures detailed in § 15–9–440; there-

*tional Shoe Co. v. Washington,* 326 U.S. 310, 311, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As the Supreme Court recently made clear:

> ". . . all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." (footnote omitted). *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 2584–5, 53 L.Ed.2d 683 (1977).

Since *Shaffer,* all assertions of jurisdiction must be examined for the presence of "minimum contacts," whether the plaintiff seeks through those contacts a judgment *in personam, quasi-in rem,* or *in rem.* (Id. at 2583 n. 23). It is clear after *Shaffer* that, standing alone, the presence of trust property in South Carolina would not support jurisdiction in an action unrelated to that property, where the "only role played by the property is to provide the basis for bringing the defendant into court" (97 S.Ct. at 2583). With this brief background, the facts of this case may be examined to see if they compel jurisdiction in this action.

The court first faces the state law question of whether the trustees, as legal owners of all trust property, actually have any "trust property" in South Carolina. As one example of "trust property situated in South Carolina," the plaintiffs contend that, since the defendants as trustees own a majority of the stock of Wooten Corporation—(which admittedly owns a warehouse in Greenville, South Carolina)—the trustees thereby, in effect, own the warehouse. However, in this case, it is the trustees who are being sued for activities connected with the *trust*; no suit against the Wooten Corporation is involved here. While it is probable that the Wooten Corporation could be sued in South Carolina in an action involving the Greenville warehouse, it is less clear that stockholders of the corporation can be haled before South Carolina courts on an unrelated cause of action by third parties not connected with the corporation solely because the trustees own stock in the corporation. If such an action could be maintained, a stockholder of a large corporation

doing interstate business could be sued on unrelated causes of action in every state in which the corporation owned property because the stockholder would be held to be the "owner" of a portion of that property. Happily, the court is not required to determine the validity of this tenuous extension of the "property" concept because the record reveals that the trust does own property in South Carolina in the form of a mortgage executed by the Wooten Corporation on property situated in Greenville, South Carolina. In *Ex parte Johnson,* 147 S.C. 259, 145 S.E. 113, 121 (1929), it is said that "a mortgage does not convey any legal estate to the mortgagee, yet such mortgagee has an equitable interest which should be protected;" and in *Lott v. Claussens, Inc.,* 251 S.C. 478, 163 S.E.2d 615, 617 (1968), the South Carolina Supreme Court held that the defendant's right to display its bread on bread racks owned by a baking council, of which defendant was a member and to which it contributed funds, was a valuable right rising to a "property" right. The court, therefore, found that the defendant "owned property" in the county where the bread racks were located, for the purposes of jurisdiction over the non-resident defendant corporation. In reaching its conclusion, the court stated:

> "The term 'property' is, in law, a generic term of extensive application. It is a term of large import, of broad and exceedingly complex meaning, of the broadest and most extensive signification, a very comprehensive word, and is the most comprehensive of all terms which can be used. The term is often called 'nomen generalissimum,' and is *employed to signify any valuable right or interest protected by law, and the subject matter or things in which rights or interest exist."* 251 S.C. at 481, 163 S.E.2d at 617 (emphasis added)

Based on the liberal construction by the South Carolina Supreme Court given to the meaning of "property" in the state,

---

fore, the court is concerned here only with the presence of trust property in the state and the reasonableness of the assertion of *in personam*

jurisdiction on that basis. *See, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977).

this court holds that the trustees, as legal owners of the property of the trust, by virtue of the ownership of a mortgage on South Carolina real estate actually have an ownership interest in property situated in South Carolina. Additionally, the record reflects that the Wooten Corporation, a South Carolina corporation, owes the trust substantial sums of money. The South Carolina Supreme Court has held that a debt is property subject to attachment in the state, *Howard v. Allen*, 254 S.C. 455, 176 S.E.2d 127, 128 (1970).[3] The court alternately finds that this debt of the Wooten Corporation is property of the trust situated in this state since the debtor is situated here.

■ This conclusion, however, only begins the inquiry because the court must now analyze the operation of § 15–9–440(3) (1976) in this case to determine whether an assertion of jurisdiction on the basis of the presence of this "property" in the state provides adequate "minimum contacts" with this state. Since *Shaffer v. Heitner* is important to the inquiry here, it will be analyzed in some detail. Plaintiff in *Shaffer,* a disgruntled shareholder of the Greyhound Bus Corporation, sued the corporation, its directors and officers in a Delaware state court for mismanagement. To support jurisdiction against the individual defendants, who had never "set foot in Delaware," 97 S.Ct. at 2585, the plaintiff attached—(sequestered)—defendants' shares of stock in the Greyhound Corporation. The United States Supreme Court was careful to note that the only role played by the attachment of the defendants' stock—(fortuitously also issued by Greyhound)—was to bring the defendants before the Delaware court; the property attached was "not the subject matter of th[e] litigation, nor [was]

the underlying cause of action related to the property" 97 S.Ct. at 2585. The situation here, by contrast, is markedly different. The property involved, as the magnet which draws the defendants before this court, is also the same property that is involved in the underlying cause of action, for it is partly through the purchase of the Wooten mortgage and the loan to the Wooten Corporation that the plaintiffs allege that defendants violated their fiduciary duties. The Court in *Shaffer,* distinguishing those cases where property's presence alone could provide the· basis for minimum contacts, noted:

"The presence of property may also favor jurisdiction in cases . . . where the defendant's ownership of the property is conceded but the cause of action is otherwise related to rights and duties growing out of that ownership." 97 S.Ct. at 2582.

The Court also noted that it "did not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant and the litigation." *Id.* at 2582.

This case then is clearly factually distinguishable from the situations described by the Supreme Court in *Shaffer v. Heitner, supra,* and *Harris v. Balk,*[4] 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), in which the property asserted as a basis for jurisdiction had no involvement with the suit other than to constitute a basis "to compel the defendant to enter a personal appearance." 97 S.Ct. at 2583. The fact that the property situated in South Carolina figures prominently in a major part of the alleged mismanagement comprising this cause of action argues strongly for approval of person-

**3.** Of course, following the overruling of *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) by *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the attachment of a debt may not, without more, serve to bring a third party—(to whom the attached debt is owed)—before the attaching forum's courts. However, the *Shaffer* decision does not disturb the common law notion that the situs of the debt lies with the debtor.

**4.** It is interesting to note that, while the Supreme Court grounded its decision in *Harris v. Balk* on a *quasi-in-rem* theory, recent research on that case has discovered that jurisdiction over *Balk* in Maryland could probably have been sustained on a "minimum contacts" theory, since Balk probably visited Epstein's· warehouse in Baltimore to order the goods which were the focus of the *Epstein-Balk* controversy. *See,* 1978 Wash.U.L.Q. 273, 285 *Symposium: The Impact of Shaffer v. Heitner.*

al jurisdiction on the basis of these contacts alone. However, the record in this case reveals additional contacts between the defendants, the forum, and the litigation, convincing this court that jurisdiction here is proper.

While the defendants in *Shaffer v. Heitner, supra,* had never "set foot in Delaware", 97 S.Ct. at 2585, the defendants here, on inquiry by the court, have stated that defendant Carl Baldt made the following trips to Greenville, South Carolina:

1975 - 12 trips

1976 - 11 trips  .

1977 - 8 trips

The defendants additionally have said:

"It is impossible to state whether Mr. Baldt, when he made the above enumerated trips to Greenville, was legally acting in his capacity as an officer and director of the Wooten Corporation of Wilmington, whether he was acting in his capacity as a trustee of the Trust, or whether he was acting in both capacities." (Defendants' Memo. 1/5/79).

Supporting the ambiguity of the situation is the fact that the trust paid for all of the 1975 trips, while the corporation paid for the 1976 and 1977 trips. It would be an unusual situation if all the 1975 trips concerned trust business, while all of the later trips concerned only corporate matters. The more logical inference, and the one this court adopts, is that the majority of the trips during all three years involved a combination of trust and corporate business for, as is apparent from the preceding portions of this opinion, the trust and corporate business are closely intertwined almost to the point that it could be said that the distinction between trust and corporate actions is blurred beyond recognition.[5] Suffice it to say that this court is convinced that a majority, if not all, of the 31 trips to South Carolina in the three years mentioned involved trust affairs to some extent. These trips to attend to trust affairs in South Carolina bring into play South Carolina Code § 36–2–803 (1976).[6] Under subsection (a) of the above quoted section, the court may exercise personal jurisdiction over a person who "transact(s) any business in this State"; additionally, since the visits to this state appear to be connected with the trustees' transactions with the Wooten Corporation, which form a major part of the cause of action in this case, the quoted activity would allegedly fall under subsection (c), "commission of a tortious act in whole or in part in this State." Under the facts of this case, subsection (e) has the same jurisdictional effects as § 15–9–440(3) referred to previously. § 36–2–803(1)(e) provides for personal jurisdiction over defendants "having an interest in, using, or possessing real property in this State."

---

**5.** The court, however, expresses no opinion on the merits of plaintiff's allegations and does not intend to infer that the relationship referred to above necessarily partakes of a sinister character; or involves any breach of fiduciary duties by the trustees.

**6.** The Section provides in full:

*§ 36–2–803. Personal jurisdiction based upon conduct.*

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in the State;

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property or risk located within this State at the time of contracting; or

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him, and such action, if brought in this State, shall not be subject to the provisions of § 15–7–100(3).

This court is of the opinion that what has previously been stated would suffice to allow personal jurisdiction over these defendants on the basis of the minimum contacts noted; however, the record additionally reveals other connections by the defendants with this forum and this litigation. For instance, the trust receives rents and profits from real estate in South Carolina on which it holds a mortgage from the Wooten Corporation; and the trust has made several other loans to South Carolina residents which may or may not be involved in charges of mismanagement at trial. The court mentions these activities as additional, but not necessary, contacts of the defendants with the forum and the litigation.[7]

The United States Supreme Court, the South Carolina Supreme Court, and the lower federal courts construing cases arising in South Carolina, have all held that a single contact with this state is sufficient to give the forum personal jurisdiction over the defendant when that contact gives rise to, or figures prominently in, the cause of action under consideration. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Ross v. American Income Life Ins. Co.,* 232 S.C. 433, 102 S.E.2d 743 (1958); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193 (4th Cir. 1976). In the instant case, where there are repeated visits to the state by one of the defendants,[8] continuous financial transactions with several South Carolina residents, alleged tortious activities committed by the defendants in whole or in part in South Carolina, as well as defendants' ownership interests in property in the state, and when the court is convinced that these contacts all appear to be connected with the underlying cause of action, this court finds that there are proper statutory and constitutional bases for personal jurisdiction under § 36-2-803 as well as § 15-9-440.

Accordingly, the defendants' motion to dismiss is hereby denied, and the defendants shall have thirty (30) days[9] from the date of this Order to answer or otherwise plead to the complaint herein.

AND IT IS SO ORDERED.

7. The plaintiffs have claimed that these contacts and several others mentioned in the record are sufficient for this court to find that the trust is "doing business" (§ 36-2-802) in South Carolina. Of course, a finding that the trust is "doing business" in South Carolina would allow suit against the trustees on *any* cause of action against them in their capacities as trustees. The court does not feel that the more stringent "doing business" test has, however, been met. *See, Ratliff v. Cooper Laboratories,* 444 F.2d 745, 748 (4th Cir. 1971).

8. Since the record only reveals that defendant Baldt ventured into South Carolina, but is silent on defendant DeLuca's visits, if any, the question arises whether Baldt's visits could support personal jurisdiction over DeLuca. In the analagous situation of a business partnership, there appears to be a split of authority, but the weight of recent case law supports the proposition that the presence of one partner in a forum will *not alone* support personal jurisdiction over absent partners individually, although service upon one partner is proper service on the partnership for partnership acts undertaken by the individual so served. *See, Donald Manter Co. v. Davis,* 543 F.2d 419, 420 (1st Cir. 1976); *First National Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1336-37 (D.Minn.1976). As pointed out by the court in *White,* however, the absent "un-servable" partner achieves a Pyrrhic victory because as a member of the *partnership* over which jurisdiction can be obtained by service on any one partner, the absent partner is personally liable for the obligations of the partnership. Relating the rationale of these cases to the present situation, while it appears that Baldt's visits are not imputable to DeLuca for purposes of personal jurisdiction, DeLuca as a co-trustee charged with complicity in the misrepresentation scheme is jointly and severally liable for losses occasioned by the breach of trust. 76 Am.Jur. 2d *Trusts* § 306. It would avail DeLuca little to stay out of proceedings here and risk losing—(by *res judicata* principles)—any defenses he may have to the action. In any event, the court has detailed in the body of this Order sufficient contacts of both defendants with the forum, apart from Baldt's visits, to support personal jurisdiction over both.

9. Rule 12(a) provides that an answer shall be served within twenty (20) days after service of the summons and complaint, but that if a motion is served instead of an answer and that motion denied, "the responsive pleading shall be served within 10 days after notice of the court's action" . . . "unless a different time is fixed by order of the court." Since this case involves a complex factual assertion, the court feels that thirty (30) days is an appropriate interval to allow the defendants to formulate responsive pleadings.