COAST–TO–COAST STORES, INC., a Delaware corporation, Plaintiff,

v.

WOMACK–BOWERS, INC., an Arkansas corporation; Wendal Womack, an individual; Melton Lavon Womack, an individual; and Sam R. Martin, an individual; Defendants.

No. Civ. 4–84–120.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 10, 1984.

Patricia A. Knipe, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Marshall H. Tanick, Tanick & Heins, Minneapolis, Minn., and John E. Moore, Osmon, Wilber & Moore, Mountain Home, Ark., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion to dismiss for lack of personal jurisdiction over both corporate and individual guarantor defendants, Fed.R. Civ.P. 12(b)(2), or in the alternative to transfer venue to the United States District Court for the Eastern District of Arkansas under 28 U.S.C. § 1404(a). The Court will grant the motion to transfer venue.

## FACTS

In April, 1979 defendant Womack-Bowers, Inc., an Arkansas corporation with its principal place of business in Arkansas, entered into a franchise agreement with plaintiff Coast-to-Coast Stores, Inc., a Dela-

ware corporation with its principal place of business in Minnetonka, Minnesota. Plaintiff's franchisor business consists of the selling of goods and the providing of support services to franchisee retailers in approximately 30 states. Under the terms of this agreement, defendants were to operate a hardware store in Batesville, Arkansas as plaintiff's franchisee.

Prior to the execution of the franchise agreement, the three individual defendants, who are officers in the defendant corporation, each signed personal guarantees in which they obligated themselves to pay the indebtedness of defendant Womack-Bowers. These guarantees were a prerequisite for plaintiff's approval of the franchise agreement.

The application for the franchise, the franchise agreement itself, and the personal guarantees were all signed by defendants in Arkansas. The negotiations leading up to the franchise agreement took place in Arkansas. After the agreement was signed by defendants in Arkansas, it was mailed to plaintiff's office in Minnesota, where it was approved and signed; the fully executed copies were then sent back to defendants.

Defendants' franchise business was operated wholly within the state of Arkansas. At no time was it licensed or registered to do business in Minnesota. Defendants have no employees or agents in Minnesota and they own no real estate in Minnesota. Defendants' day-to-day business dealings with plaintiff corporation took place through plaintiff's district managers in Arkansas or with plaintiff's divisional headquarters in Missouri and Indiana.

Plaintiff provided various services pursuant to the terms of the franchise agreement from its national headquarters in Minnetonka. Plaintiff developed advertising materials and store designs for defendants. It also maintains a purchasing department at its headquarters and claims to have purchased a majority of the merchandise sold by defendants through this office.

Plaintiff also provided accounting services to defendants through its Minnetonka office. Finally, plaintiff provided defendants with insurance coverage through a subsidiary company located in Minnesota.

Defendants operated the franchise hardware store in Arkansas from 1979 until 1983, when the store failed and went out of business. Plaintiff filed this diversity action claiming that defendants owe $53,114.11 for merchandise provided under the franchise agreement. Plaintiff further claims that defendant breached various provisions of the franchise agreement, thereby causing plaintiff "to lose a potentially profitable retail outlet, and damaging plaintiff's image and reputation to the extent that it will be unable in the future to set up a successful franchise in the Batesville, Arkansas market." Plaintiff's First Amended Complaint, ¶ 13.

Defendants filed an answer and counterclaim in which they raise affirmative defenses based on fraud and misrepresentation and a counterclaim based on alleged fraud, breaches of the franchise agreement, and violations of the Arkansas Franchise Practices Act, Ark.Stat.Ann. § 70-814. The crux of defendants' counterclaim is that plaintiff enticed defendants into the franchise relationship through an inaccurate and misleading market survey of the Batesville, Arkansas area. Defendants also allege as part of their counterclaim that plaintiff failed to provide several critical support services pursuant to the franchise agreement.

## DISCUSSION

Defendants have moved to dismiss for lack of personal jurisdiction, or in the alternative to transfer venue to the Eastern District of Arkansas. The Court has the authority under 28 U.S.C. § 1404(a) to transfer venue whether or not it has jurisdiction, as long as the action could have originally been brought in the transferee court. The action before the Court could clearly have originally been brought in the Eastern District of Arkansas.[1] According-

1. The district court in Arkansas would have

clearly had personal jurisdiction over the Ar-

ly, since the Court has determined that Arkansas would be the most appropriate venue in this case, the question of whether the Court has personal jurisdiction over defendants will not be reached.

The standard for determining whether to transfer venue is set forth at 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The party seeking transfer bears the burden of establishing that the transfer should be granted under the statute, although the Court need not give the plaintiff's choice of forum the near controlling weight it had under the old forum non conveniens doctrine. *First National Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1337 (D.Minn.1976). Plaintiff's argument against transfer in this case rests almost solely on the traditional presumption in favor of plaintiff's choice of forum. *J.F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.,* 462 F.2d 998 (8th Cir.1972) (defendant must show that balance of conveniences strongly favors dismissal or transfer).

### Convenience of Parties

Neither party focused its argument on this statutory factor. Defendants would appear to be clearly inconvenienced by having to answer this action in Minnesota. They maintain no corporate or individual presence in the state and have never even set foot in Minnesota, with one two-day exception. Defendants' residence in Arkansas is approximately 800 to 900 miles from Minneapolis.

█ Plaintiff would obviously also suffer some inconvenience if the case is transferred to Arkansas. A transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting transfer. *Van Dusen v. Barrack,* 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945

(1964). In order to carry their burden, defendants must show that their inconvenience *"strongly"* outweighs the inconvenience plaintiffs would suffer if venue were in the Eastern District of Arkansas. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971) (emphasis in original). Defendants have met this burden. While plaintiff is a resident of the forum state and would have to travel an equally great distance to the trial, it is a national corporation with franchises in 30 states. Plaintiff has district managers located in Arkansas. It has a divisional headquarters in the adjoining state of Missouri. These officers could provide support staff and lessen the burden on plaintiff of having to litigate in Arkansas. Second, these officers are directly implicated in this suit. Finally, the existence of these offices demonstrates that plaintiff has contacts in Arkansas; if plaintiff has personnel based in that forum and traveling to that forum for business purposes, then it surely can travel there for the purpose of this litigation. Defendants have no comparable contacts with Minnesota or support systems here. Their inconvenience would be much greater than plaintiff's.

### Witnesses and Records

The second factor in this decision whether to transfer venue under section 1404(a) is the convenience of witnesses. In a more general sense, this factor considers "the relative ease of access to sources of proof." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1964) (discussing forum non conveniens). Defendants argue that virtually all of the witnesses who will testify on significant disputed issues live either in Arkansas or substantially closer to Arkansas than to Minnesota. In addition to the three individual defendants living in Arkansas, defendants claim that there are eight non-party witnesses that live in Arkansas. At the trial, these witnesses will testify to, *inter*

kansas defendants in this case. Further, since all the defendants reside in the Eastern District

of Arkansas, venue is appropriate there under 28 U.S.C. § 1391(a).

*alia,* the lack of timely assistance from plaintiff in store operations (W.T. Alton, franchise employee), franchise financing (Charles Arnold, loan officer from local bank), commercial unsuitability of the franchise site and consequent financial losses (Carter Jeffries, lessor), demographics, and the franchise arrangements of a nearby Coast-to-Coast store. This testimony is all relevant to defendants' counterclaims and defenses based on fraud, misrepresentation, and breaches of the franchise agreement. In addition, defendants expect to call two additional witnesses from Oklahoma and Tennessee who will testify regarding plaintiff's marketing practices and the salvage value of defendants' business.

Plaintiff's witnesses do not appear to be centered in any one location. Several party witnesses are located in Minnesota. Defendants claim that these witnesses will testify to foundational and undisputed matters such as the amount due on the account. Other potential witnesses reside in Missouri and Illinois. Plaintiff concedes that the two persons who had the most contact with defendants, David Lange and Bob Pomeroy (former employees of plaintiff), both reside in Missouri. Lange prepared the market survey that defendants contend is a central disputed issue in the litigation. Plaintiff makes no claim that there is extensive documentation germane to the litigation which would be inconvenient to produce in Arkansas. Any records which plaintiff might introduce would relate to the simple breach of contract claim and would be fairly easy to transport.

Defendants have demonstrated that the Arkansas venue would be considerably superior to Minnesota in terms of access to proof. The greatest number of witnesses in this action reside in Arkansas. Further, those witnesses who do not live in Minnesota reside in states which are considerably closer to Arkansas (Oklahoma, Tennessee, Missouri). *See First National Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1333 (venue transferred because witnesses located in or near transferee forum far outnumber those based in Minnesota). Defendants correctly argue that the location of essential non-party witnesses is a critical factor in the venue determination. *See, e.g., Aamco Automatic Transmissions v. Bosemer,* 374 F.Supp. 754, 758 (E.D.Pa. 1974) (involving a franchise situation strikingly similar to the one before the Court); *Norval Industries, Inc. v. Superior Companies, Inc.,* 515 F.Supp. 895, 899 (D.Minn. 1981). The rationale behind this rule is twofold. First, there is concern for the convenience of the witnesses. In this case an Arkansas venue would clearly be the most economical for the majority of the witnesses. Second, since nonresident nonparty witnesses cannot be subpoenaed, Fed.R.Civ.P. 45(e)(1), their trial testimony must be by deposition. Courts much prefer the presentation of live testimony to depositions. 15 C. Wright and A. Miller & Cooper, *Federal Practice and Procedure,* § 3851. In this case, there are a great number of witnesses in Arkansas whose live testimony on complex issues is required so that it would be much more convenient to try the case in Arkansas.

### Interest of Justice

■ Defendants make three interest of justice arguments for transfer of venue. All are persuasive. First, defendants contend that this case involves significant issues of local law which should be decided by a court sitting in Arkansas. The Arkansas Franchise Act, Ark.Stat.Ann. §§ 70-807—70-818, applies to this litigation and serves as one of the grounds for defendants' counterclaim. An Arkansas court would be in a better position than this Court to construe the statute. *See First National Bank of Minneapolis,* 420 F.Supp. at 1337. Second, defendants argue that the relative resources of the parties militates in favor of an Arkansas venue. This is an appropriate consideration in transfer of venue cases. *See id.* While there is no evidence before the Court as to the precise resources of the parties, the corporate defendant is a failed business and plaintiff is apparently a viable nationwide corporation. Finally, defendants contend that this litigation involves particularly local issues which can best be addressed

in the locality in which they arose. The viability of the local market is one of the keys to their defense and counterclaim, and the damage to plaintiff's business reputation in Arkansas is part of plaintiff's amended complaint. Reputation issues should be tried in the locality in which the alleged damages occurred. *Harry-Rich Corporation v. Curtiss-Wright Corporation,* 308 F.Supp. 1114, 1120 (S.D.N.Y. 1969). It would be more difficult to try the damage to plaintiff's Arkansas reputation or the viability of the market in Batesville, Arkansas before the Court in Minnesota.

Plaintiff's only substantive argument against the transfer of venue (aside from its reliance on the presumption in favor of a plaintiff's choice of forum) is that defendants should not be allowed to obtain a transfer simply by asserting counterclaims which contain issues arising in Arkansas. This argument is without merit for several reasons. First, the plaintiff's own complaint raises the Arkansas based issue of its own business reputation. Second, some of the local issues arise in the context of defendants' affirmative defenses to plaintiff's suit, and are therefore clearly a proper basis for transfer. Third, whether defendants' counterclaim is characterized as compulsory or permissive under Fed.R. Civ.P. 13, it is closely related to plaintiff's breach of contract claim and is properly before the Court. In *Aamco Automatic Transmissions v. Bosemer,* 374 F.Supp. 754 (E.D.Pa.1974), a nearly identical franchise case relied upon by defendants, the court transferred venue because of uniquely local issues raised in part in the franchisee defendant's counterclaim. Defendants should therefore not be precluded from seeking a venue transfer because the local issues stem partly from their counterclaim.

**CONCLUSION**

While defendants bear the burden of establishing that venue is more appropriate in another court, they have clearly met their burden in the case before the Court. This case would be much more conveniently litigated in Arkansas, where the majority of the witnesses reside and where most of the issues arose. Plaintiff has offered little justification for keeping the action in Minnesota beyond the presumption traditionally accorded a plaintiff's choice of forum. This presumption alone is insufficient reason for the Court to retain venue in this case.

Accordingly, **IT IS ORDERED** that defendants' motion to transfer venue to the United States District Court for the Eastern District of Arkansas is granted.