Brian W. GRAFF, Plaintiff,

v.

QWEST COMMUNICATIONS
CORPORATION,
Defendant.

No. CIV. 98–2592 (DSD/AJB).

United States District Court,
D. Minnesota.

Jan. 25, 1999.

Eldon J. Spencer, Jr., Brian F. Kidwell, and Leonard, O'Brien, Wilford, Spencer & Gale, St. Paul, MN, and Thomas C. Atmore, Leonard, O'Brien, Wilford, Spencer & Gale, Minneapolis, MN, counsel for plaintiff.

Melissa Raphan, Michael Iwan, and Dorsey & Whitney, Minneapolis, MN, counsel for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff Brian W. Graff to remand this case to Hennepin County District Court and the motion of defendant Qwest Communications Corporation to transfer this case to the United States District Court for the District of Colorado. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court denies plaintiff's motion and grants defendant's motion.

## BACKGROUND

Plaintiff Brian W. Graff alleges that at the time of the filing of this action in Hennepin County District Court on November 6, 1998, he was a resident of Colorado. Defendant Qwest Communications (hereafter "Qwest") at all times has been a Delaware corporation with its principal place of business in Colorado. The substantive facts underlying Graff's breach of contract and promissory estoppel claims are not now at issue. The court's recitation of the relevant facts and subsequent discussion will therefore focus primarily on the two procedural motions now pending.

Plaintiff accepted an offer of employment from defendant on November 7, 1997, and he and his family moved from their home in Hudson, Wisconsin to the Denver, Colorado area. The letter sent by defendant containing the formal offer stated that "You will be eligible to participate in Qwest's long-term incentive plan (Equity Incentive Plan). You will receive a grant of 10,000 shares at the market price on your first day of employment." Letter dated November 4, 1997, Exhibit A to Affidavit of Brian W. Graff in Opp'n to Mot. for Transfer (Docket No. 20). The parties' employment relationship ended, however, on June 16, 1998.

Alleging that defendant had breached its written employment contract by failing to tender the stock upon the inception of his employment, plaintiff served defendant with a summons and complaint in an action filed in Minnesota State Court (hereafter "the Hennepin County action") on November 6, 1998. The Hennepin County action was removed by defendant to the United States District Court for the District of Minnesota (hereafter "the Minnesota federal action") on December 4, 1998. Also on December 4, 1998, defendant filed a declaratory judgment action in the United States District Court for the District of Colorado (hereafter "the Colorado federal action"), seeking a judicial declaration that it did not breach the parties' employment contract by not tendering the shares of stock in question.

Plaintiff, arguing that there is no basis for federal court jurisdiction, moves to remand this case to Hennepin County District Court. Defendant, while opposing plaintiff's motion to remand, simultaneously moves to transfer this case to Colorado for consolidation with the Colorado federal action. After extensive briefing and oral argument, these matters are now before the court for decision.[1]

---

1. Plaintiff has also filed a notice of motion and motion for an injunction, asking that the court enjoin defendant from further prosecution of the Colorado federal action. At oral argument, counsel for plaintiff averred that the notice and motion filed were "informational" only, and would be briefed and presented to the court if necessary after the court's .decision on the motions to remand and transfer. The court therefore need not address the injunction issue at this time.

## DISCUSSION

### A. Plaintiff's Motion to Remand

■ Plaintiff originally brought this action in state court. Pursuant to 28 U.S.C. § 1446, defendant removed the action to federal court. Plaintiff then filed his motion to remand this action to state court.

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A lack of federal subject-matter jurisdiction cannot be waived. *See Id.; Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir.1998) (citing *Berger Levee Dist., Franklin County, Mo. v. U.S.*, 128 F.3d 679, 680 (8th Cir.1997)). An action may be removed to federal court only if it presents a federal question or if diversity jurisdiction exists. *See* 28 U.S.C. § 1441. The purpose of the removal statutes is to restrict and limit removal jurisdiction, such that removal statutes are to be construed narrowly and any doubt should be resolved against removal jurisdiction. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). *See also Johansen v. Employee Ben. Claims, Inc.*, 668 F.Supp. 1294, 1295–96 (D.Minn.1987) (discussing defendant's burden in showing action was properly removed and the justification for narrowly construing removal statute).

A defendant seeking to remove an action to federal court on the basis of diversity jurisdiction must normally demonstrate that diversity existed both at the time the action was filed and at the time removal is sought. *See, e.g., Freeport–McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) ("The well-established rule [is] that diversity of citizenship is assessed at the time the action is filed."). An exception to the rule requiring diversity both at the time of the filing of the complaint and at the time of removal, however, applies when the plaintiff takes some voluntary action subsequent to filing the complaint which creates diversity of citizenship amongst the parties. This "voluntary-involuntary rule" was first recognized in *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898), and was incorporated into the United States Code in 1949:

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446(b). The purpose of this provision "is to recognize that the action as originally brought may not be removable, but that it may become so through some event occurring afterwards." Commentary on 1988 Revision of Section 1446 by David D. Siegel (found at 28 U.S.C.A. § 1446).

Courts have recognized the continued validity of the "voluntary-involuntary" rule after the enactment of § 1446(b). *See, e.g., Hager v. Gibson*, 108 F.3d 35, 41 (4th Cir. 1997) ("It has long been settled that a basis for diversity jurisdiction not present at the time of commencement of an action may be supplied by later voluntary acts of a plaintiff, though not of a defendant."); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992) ("[W]hen Congress referred to 'a case which is or has become removable' in section 1446(b), Congress apparently intended to incorporate the existing definition of 'removable,' a definition that included the voluntary/involuntary rule."); *In re Iowa Mfg. Co. of Cedar Rapids, Iowa*, 747 F.2d 462, 463 (8th Cir.1984) (recognizing continued validity of voluntary-involuntary rule first announced by Supreme Court in *Powers*); *Self v. General Motors Corp.*, 588 F.2d 655, 657 (9th Cir.1978) (reviewing voluntary-involuntary rule, recognizing doctrine's continued validity, and citing cases). The rule is commonly used by a defendant seeking to remove a case to federal court when a plaintiff voluntarily dismisses a separate nondiverse defendant. *See In re Iowa Mfg.*, 747 F.2d at 463. Nothing in the rule, however, limits its applicability to this specific scenario. *DeBry v. Transamerica Corp.*, 601 F.2d 480, 486–87 (10th Cir.1979) (holding that a plaintiff's voluntary change of residence leading to complete diversity of parties rendered case removable by defendant to federal court, despite fact that diversity not present when case originally filed). The only prerequisite to the rule's applicability is that

the action creating diversity must be a voluntary act on the part of the plaintiff.

For removal to be appropriate, diversity between the parties must have been established at the time of removal by a voluntary action of the plaintiff. Such diversity could exist in this case if plaintiff had changed his domicile to Minnesota by December 4, 1998, the date of removal. A change in domicile requires physical presence in a new location in connection with an intent to remain in that location indefinitely. *See Blakemore v. Missouri Pacific R. Co.*, 789 F.2d 616, 618 (8th Cir.1986); *Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir.1981). The court concludes that at the time of removal, both these elements were satisfied.

An affidavit submitted by plaintiff establishes that on November 12, 1998, plaintiff and his wife signed a purchase agreement to buy a home in Stillwater, Minnesota. Affidavit of Brian W. Graff (Docket No. 8) at ¶ 10. Plaintiff states that "[u]ntil the date on which that purchase agreement was signed, we had not decided to move to Minnesota, but continued to hope that we could find a suitable home which would permit us to return to the area of Hudson/River Falls, Wisconsin." *Id.* The court can therefore conclude that from November 12, 1998, forward, plaintiff intended to make Minnesota or Wisconsin his home indefinitely. Plaintiff further states that "[o]n December 1, 1998, following the closing on the sale of our Colorado home, we left Colorado and arrived in Minnesota on December 2, 1998." *Id.* at ¶ 11. This statement establishes plaintiff's physical presence in Minnesota at the time of removal. By his

own voluntary acts, therefore, plaintiff had changed his domicile to Minnesota by December 4, 1998, thereby making removal by defendant proper.[2] *See DeBry*, 601 F.2d at 486–87.

The rationale for the voluntary act rule is that "although a defendant should not be allowed to change his domicile after the complaint is filed for the sole purpose of effectuating removal, there is no reason to protect the plaintiff against the adverse consequences of his own voluntary acts." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir.1996). Plaintiff concedes in his affidavit that he was domiciled in Minnesota by December 2, 1998, as a result of his own voluntary acts. As the underlying rationale for protecting plaintiff's choice of forum no longer applies, and the facts clearly demonstrate a change in domicile on the part of plaintiff before removal by defendant, plaintiff's motion for remand must be denied.

**B. Defendant's Motion to Transfer**

 In addition to opposing plaintiff's motion to remand, defendant separately contends that pursuant to 28 U.S.C. § 1404(a), the court should transfer this case to the United States District Court for the District of Colorado. Section 1404(a) states that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Pursuant to section 1404(a), the court has authority to transfer venue whether or not it

---

2. Defendant contends that plaintiff had changed his domicile to Minnesota as early as September 1998, well before the filing of the Hennepin County action, and that diversity among the parties has existed all along. The affidavit supplied by plaintiff provides some facts to support this contention. In September 1998 plaintiff accepted a position with the Minneapolis advertising agency Mueller Mack, Inc. and put his Colorado home on the market. Affidavit of Brian W. Graff (Docket No. 8) at ¶¶ 6–7. It is therefore fair to conclude that plaintiff no longer had an intent to indefinitely reside in Colorado at the time he filed the Hennepin County action. Indeed, plaintiff retained a realtor to find him a home in the east metropolitan Twin Cities area or the Hudson/River Falls area of Wisconsin, evidencing an intent to reside in one of these areas indefinitely.

*Id.* at ¶ 8. Plaintiff spent the weeks during the period from September through December 1998 in Minneapolis while commuting back to the Denver area on weekends. *Id.* at ¶ 7. While in Minneapolis during this period plaintiff divided his time as a guest between three homes belonging to family and friends. *Id.* Defendant was therefore also physically present in Minnesota for much of the Fall of 1998. Because the court concludes that plaintiff's voluntary act created diversity jurisdiction before removal on December 4, 1998, the court need not determine whether these facts created diversity before removal at the time of the commencement of the Hennepin County action. At least one case, however, *Minnesota Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 320 (D.Minn.1980), suggests that diversity did exist at that time.

has jurisdiction, as long as the action could have originally been brought in the transferee court. *Coast–to–Coast Stores, Inc. v. Womack–Bowers, Inc.,* 594 F.Supp. 731, 732 (D.Minn.1984). Generally, transfer under § 1404(a) "should not be freely granted." *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir.1982). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *United Mortg. Corp. v. Plaza Mortg. Corp.,* 853 F.Supp. 311, 315 (D.Minn.1994). Transfer should also be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 964 (D.Del.1993) (citation omitted). The court considers the convenience of the parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In addition to these enumerated factors, the court must conduct a case-by-case evaluation of the particular circumstances involved. *Terra Intern., Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 691 (8th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

### 1. Convenience of the Parties

■ There is a "normal presumption in favor of a plaintiff's choice of forums." *Christensen Hatch Farms, Inc. v. Peavey Co.,* 505 F.Supp. 903, 911 (D.Minn.1981). This is particularly true where the plaintiff resides in the district in which the lawsuit was filed. *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.,* 776 F.Supp. 1271, 1276 (N.D.Ill.1991). Moreover, section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer. *Van Dusen v. Barrack,* 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

Here, defendant is headquartered in Colorado, and the events allegedly giving rise to plaintiff's claims occurred in Colorado. While plaintiff signed his employment contract with defendant in Minnesota, he demanded the 20,000 shares of stock only after he began his employment with defendant in Colorado. Defendant's refusal to tender the shares occurred once plaintiff had arrived and began his employment in Colorado. It is therefore clear that the operative facts underlying this litigation occurred in that state. Indeed, plaintiff threatened to sue defendant in Colorado, and the Hennepin County action was seemingly filed instead only because plaintiff had moved back to Minnesota. *See* Supplemental Affidavit of Melissa Raphan (Docket No. 23) at ¶¶ 2–4 (averring that before moving to Minnesota plaintiff retained Colorado counsel who sent an initial demand letter and subsequent correspondence to defendant's Denver headquarters).

Further, the employees of defendant involved in negotiating plaintiff's employment, including the stock at issue, work at defendant's headquarters in Colorado, as do those employees involved in administration of defendant's Equity Incentive Plan. *See* Affidavit of Barbara Brannen (Docket No. 18) at ¶¶ 5, 8. Especially in a case such as this, where plaintiff has traveled extensively to Colorado from Minnesota in the past, the net inconvenience to the parties will be less if this case were transferred to Colorado. *See Superior Consulting Co. v. Walling,* 851 F.Supp. 839, 845 (E.D.Mich.1994), *appeal dismissed,* 48 F.3d 1219 (6th Cir.1995) (finding that where employee made repeated trips to transferee forum during course of employment, the inconvenience of employee appearing when necessary during subsequent litigation is de minimis).

### 2. Convenience of the Witnesses

■ The convenience of the witnesses is an important factor for the court since it determines the "relative ease of access to sources of proof." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839. In *Coast–to–Coast Stores, Inc.,* the court found that relevant considerations concerning this factor include the number of essential non-party witnesses, their location and the preference of courts for live testimony as opposed to depositions. 594 F.Supp. at 734. However, the court notes that this factor "should not be deter-

mined solely upon a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Nelson v. Master Lease Corp.*, 759 F.Supp. 1397, 1402 (D.Minn.1991) (citing Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 at 425). In determining this factor, the court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. *Reid–Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir.1991).

█ It is possible that both parties in this case will seek to introduce testimony from non-party witnesses. Defendant has specifically pointed to Martin Pocs, an employee of the recruiting agency DHR International, who assisted defendant in recruiting plaintiff and who works and resides in Colorado. Defendant contends that Mr. Pocs can testify about the terms of the offer of employment extended to plaintiff; the court lacks subpoena power over this witness. Plaintiff also points to potential non-party witnesses. He claims he discussed the specifics of the offer of employment extended by defendant "with my superiors and co-workers" at his former place of employment as well as his wife and "Minnesota-based financial advisor." Affidavit of Brian W. Graff in Opp'n to Mot. for Transfer (Docket No. 20) at ¶ 5. Given that if this action is transferred to Colorado these witnesses will be outside the subpoena power of the Colorado court, this factor does not strongly warrant transfer.

### 3. Interest of Justice

█ The interest of justice factor is weighed very heavily. *Radisson Hotels Intern., Inc. v. Westin Hotel Co.*, 931 F.Supp. 638, 641 (D.Minn.1996); *Nelson*, 759 F.Supp. at 1402 (citations omitted). Among the considerations which may be relevant in analyzing this factor are the relative familiarity of the two courts with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's

ability to enforce a judgment. *See Terra*, 119 F.3d at 696; *Nelson*, 759 F.Supp. at 1403 (citing *Van Dusen*, 376 U.S. at 643–45, 84 S.Ct. 805).

As an initial matter, the court finds untenable the simultaneous pendency of two separate actions relating to the same facts in different courts. Resolution of all related claims in one forum will eliminate duplicative discovery and the possibility of conflicting orders. *See In re Nine Mile Limited*, 692 F.2d at 61. The court's decision to transfer this action to Colorado is strongly influenced by a factually analogous case from the Southern District of New York. In *Totonelly v. Cardiology Associates of Corpus Christi, Inc.*, 932 F.Supp. 621 (S.D.N.Y.1996), the plaintiff was a resident of New York and defendant was a Texas medical partnership that recruited plaintiff to join its practice. The plaintiff in that case closed his New York practice, sold his home, moved his family to Texas, and began practicing in that state. He then claimed that defendant breached the employment contract and brought suit in New York. When defendant moved to transfer the action to Texas, where the breach allegedly occurred, the court granted defendant's motion. 932 F.Supp. at 622–23. The court reasoned that:

> [T]he events at issue and almost all of the pertinent witnesses are in Texas. [Plaintiff's] contract claims constitute the core of this case. The events in issue are the agreement between the parties and its alleged breach, which occurred in Texas. Virtually all of the relevant witnesses to these events are in Texas, and the third-party witnesses are beyond the subpoena powers of the court but not of a court in Texas. Moreover, at the time the events underlying [plaintiff's] claims occurred, all parties were Texas residents. But for the fact that [plaintiff] moved back to New York after the alleged breach, New York would have no connection to this action at all.

*Id.* at 623.

The facts of this case are remarkably similar. The events constituting the alleged breach in this case occurred in Colorado at a time when both parties were Colorado citi-

zens. The court agrees with defendant that plaintiff's connection with Minnesota for purposes of this lawsuit is tenuous at best. Because this case has its nexus in Colorado, the court finds that the interest of justice strongly favors transfer.

## CONCLUSION

Based on a review of the file, record, and proceedings herein, the court finds that this action was properly removed to this court from Minnesota State Court and that transfer of this action to the United States District Court for the District of Colorado is warranted. Therefore, **IT IS HEREBY ORDERED** that:

1. The motion of plaintiff to remand this matter to Minnesota State Court is denied;

2. The motion of defendant to transfer this matter to the United States District Court for the District of Colorado is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**