TRAVEL TAGS, INC., a Minnesota corporation, Plaintiff and Counter–Defendant,

v.

PERFORMANCE PRINTING CORPORATION, a Texas corporation, Defendant and Counter–Claimant.

Civil No. 06–2970 (DWF/SRN).

United States District Court,
D. Minnesota.

July 19, 2007.

Aaron W. Davis, Esq., Randall T. Skaar, Esq., and Eric H. Chadwick, Esq., Patter-

son Thuente Skaar & Christensen, PA, counsel for Plaintiff.

Aaron W. Davis, Esq., Patterson Thuente Skaar & Christensen, PA, counsel for Counter–Defendant.

Sholly A. Blustin, Esq., Blustin & Associates, PLLC, and Peter J. Harry, Esq., Brown McCarroll LLP, counsel for Defendant and Counter–Claimant.

## MEMORANDUM OPINION AND ORDER

DONOVAN W. FRANK, District Judge.

### INTRODUCTION

The above-entitled matter is before the Court pursuant to Defendant Performance Printing Corporation's ("Performance") Motion to Dismiss, Transfer, or Stay the Instant Matter. For the reasons stated below, the Court denies Performance's motion.

### BACKGROUND

Travel Tags is a Minnesota corporation with its principle place of business in North Mankato, Minnesota. Travel Tags owns United States Patent No. 7,075,725 (the "'725 patent"), which was issued by the United States Patent and Trademark Office on July 11, 2006. (First Amended Compl. ¶¶ 6, 7.) The '725 patent relates to processes for making lenticular cards. (First Amended Compl. ¶ 8.) Travel Tags manufactures lenticular card products that include utilizing the methods and processes under the '725 patent and sells its lenticular cards in Minnesota and elsewhere. (First Amended Compl. ¶¶ 9, 10.) Performance is a Texas corporation that provides printing services by and through its offices and manufacturing facilities in Dallas, Texas. Performance's services include printing lenticular cards.

On July 11, 2006, Travel Tags filed the present patent infringement case with this Court but did not serve the matter on Performance. Travel Tags alleges that "[u]pon information and belief, one or more of [Performance's] lenticular card products incorporate the patented invention claimed in the '725 Patent," and "[Performance] has made, used, sold, offered for sale, imported, and/or exported lenticular card products in Minnesota and elsewhere." (First Amended Compl. ¶¶ 11, 12.) From July 2006 through October 2006, Travel Tags and Performance participated in licensing negotiations related to the '725 patent and United States Patent No. 6,900,944 (the "'944 patent"), a patent owned by Travel Tags. Those negotiations ultimately were unsuccessful. On November 1, 2006, Travel Tags served its Summons and Complaint on Performance. Also on November 1, 2006, Performance filed a declaratory judgment action (Civ. No. 3:06–CV–2004–G) in the United States District Court for the Northern District of Texas ("the Texas action") against Travel Tags and served its Complaint on Travel Tags. In the Texas action, Performance alleges noninfringement, invalidity, and unenforceability of the '725 and '944 patents.

There has been some activity in the Minnesota action since its filing. On November 21, 2006, Performance filed its Answer and Counterclaims, claiming the same declaratory judgment claims that it had asserted in the Texas action. On January 5, 2007, Magistrate Judge Susan R. Nelson issued a pretrial scheduling order that set deadlines from March through June 2007 for discovery, exchanging claim charts, and claim construction filings. On January 24, 2007, Performance responded to Travel Tags' first sets of document requests and interrogatories. On March 2, 2007, Travel Tags filed a Motion to Compel, which Performance opposed. On March 16, 2007, Magistrate Judge Nelson granted Travel Tags' Motion to Compel.

Meanwhile, on January 8, 2007, Travel Tags filed a Motion to Dismiss, Transfer, or Stay in the Texas action. Performance did not respond to Travel Tags' motion. On March 29, 2007, the Texas court issued an Order, granting Travel Tags' motion to stay until judgment is entered in the Minnesota action and administratively closing the case. The Texas court did allow for either party upon motion to re-open the Texas action.

Performance filed the present Motion to Dismiss, Transfer, or Stay the Instant Matter on March 19, 2007, asserting that this Court should dismiss or transfer the case to Texas because venue is proper in the Northern District of Texas and because the Court has discretion to do so under the equitable exceptions to the first-filed rule. Travel Tags, on the other hand, asserts that this Court has priority to hear the case under the first-filed rule and that Performance has not shown compelling circumstances to dismiss or transfer the case to Texas.[1]

### DISCUSSION

#### I. Transfer

Performance contends that pursuant to 28 U.S.C. § 1404(a), this Court should transfer this case to the United States District Court for the Northern District of Texas. That provision states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also* 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3827 (1986) (explaining venue must be proper before a court can transfer a case under 28 U.S.C. § 1404).

Generally, transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds, Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir.1990). "The party seeking transfer bears the heavy burden of showing that the balance of factors *strongly* favors the movant." *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F.Supp. 311, 315 (D.Minn.1994) (emphasis in original). The court considers the convenience of the parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In considering these factors, the court must look to the particular circumstances of the case before it. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997).

#### A. Convenience of the Parties

A presumption in favor of a plaintiff's choice of forum exists. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F.Supp. 903, 911 (D.Minn.1981). "This is particularly true where the plaintiff resides in the district in which the lawsuit was filed." *Graff v. Qwest Commc'ns Corp.*, 33 F.Supp.2d 1117, 1121 (D.Minn. 1999). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

---

**1.** Travel Tags also asserts that the Court should deny Performance's motion as being untimely. The Court declines to deny the motion on this ground. The procedural posture in this case is different than that in *McGraw–Edison Co. v. Van Pelt*, 350 F.2d 361 (8th Cir.1965). There, many more motions had been filed and resolved by the court, including motions to dismiss and motions to sever claims, and discovery was further along there than it was here at the time that Performance filed the present motion.

Performance contends that Travel Tags' choice of venue should be given little weight here because it asserts Travel Tags was forum shopping and that Minnesota has no connection with the evidence, facts, or witnesses relative to the alleged infringement by Performance. Performance asserts that it has never operated in or retained an agent to represent it in Minnesota. Performance also asserts that it has never shipped product directly to an address in Minnesota. In addition, Performance asserts that venue for patent infringement cases is generally determined to be the center of the alleged infringing activity, and that here, the center of the alleged infringing activity is in Texas. Specifically, Performance asserts that all aspects of its lenticular printing business, as well as its employees, records, and administrative offices are located in Dallas, Texas.

Travel Tags, on the other hand, asserts that its home forum is entitled to a strong presumption, especially in light of the fact that it has chosen to file suit in the state where it resides. Because Travel Tags chose to file suit in the state where it resides, it asserts there is no evidence that it was forum shopping. Further, Travel Tags asserts that all of its witnesses and documents, and its counsel, are located in Minnesota. Travel Tags also responds to Performance's "center of the alleged infringing activity" argument, asserting that the cases that Performance cites to in support of its position are inapplicable here. Travel Tags asserts that, in those cases, the forum in which the plaintiff chose to sue was not the plaintiff's home forum, and therefore, the plaintiff's choice of forum was given less weight.

 The Court agrees with Travel Tags. Where a plaintiff has chosen to bring suit in its home forum, the fact that another location may be the center of the allegedly infringing activity does not necessari-

ly outweigh the plaintiff's choice of forum. *See Aearo Co. v. Bacou–Dalloz USA Safety, Inc.*, No. 1:03–CV–01406–DFH–VS, 2004 WL 1629566, at *2 (S.D.Ind. July 21, 2004) ("The site of the alleged infringing activity may be entitled to consideration by the court, but it alone is not determinative as a matter of law. If it were, the defendant in such cases would 'almost always be allowed to transfer the case to its home forum'. . . . Instead, the site of the alleged infringing activity is one factor for the court to take into account.") (quoting *Lucent Techs., Inc. v. Aspect Telecomms. Corp.*, No. Civ. A. 97–1618, 1997 WL 476356, at *3 (E.D.Pa. Aug. 20, 1997)); *Optima, Inc. v. Republic Indus., Inc.*, No. Civ. A. 94–3919, 1995 WL 72430, at *3 (E.D.La. Feb. 21, 1995) ("Examination of the "center of gravity" cases . . . reveals that the test is generally applied in cases in which the plaintiff does not bring suit in its home forum. In such instances, the court gives less weight to the plaintiff's choice of forum."). In *Lucent Technologies,* a patent infringement case, the court criticized the "center of gravity" test because it gives no weight to the plaintiff's activities in inventing and licensing a patent but instead gives inordinate weight to the "accused activities" by focusing only on the geographical area where the defendant designed and developed the allegedly infringing product. 1997 WL 476356, at *2. The court also stated that "Congress never intended the center of gravity test to be the predominate factor in determining venue in patent infringement suits." *Id.* Instead, the court found that the test should be one factor, among many, considered in the transfer analysis. *Id.* at *3. The court recognized that some courts make clear that the center of the allegedly infringing activity "is to be given substantial weight only where the plaintiff has engaged in forum shopping." *Id.* The Court finds the *Lucent Technologies* court's reasoning per-

suasive. In addition, the Court finds that although it may be more convenient for Travel Tags to litigate in Minnesota and more convenient for Performance to litigate in Texas, the facts giving rise to Travel Tags' action can be found in both Texas and Minnesota and that a transfer to Texas would only serve to shift the inconvenience on Travel Tags. Therefore, the Court concludes that this factor weighs in favor of maintaining the action in Minnesota.

## B. Convenience of the Witnesses

"The convenience of witnesses is an important factor for the Court and the parties since it determines the relative ease of access to sources of proof." *Nelson v. Master Lease Corp.,* 759 F.Supp. 1397, 1402 (D.Minn.1991) (quotations omitted). In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of nonparty witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See Graff,* 33 F.Supp.2d at 1121.

Performance claims that it, along with all of its relevant documents and witnesses, resides in Texas, including the Performance officers and employees involved in the development and manufacture of its lenticular cards. Travel Tags, on the other hand, claims that all of its relevant witnesses and documents reside in Minnesota and asserts that Performance is merely trying to shift the inconvenience to Travel Tags. Travel Tags also asserts that any inconvenience by Performance has been lessened because it has offered to fly to Texas for depositions and inspections. Neither party has specifically identified the names of the key witnesses in this matter, aside from Performance's general identification of Performance officers and employees in Texas.

Although the Court agrees with Performance that some of the key witnesses to the matter will likely be officers and employees in Texas, Performance has failed to identify these witnesses specifically. *See Nelson,* 759 F.Supp. at 1402 ("[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover."). Therefore, while the Court finds that witnesses from both Texas and Minnesota are likely to be called in this action, because neither party has demonstrated that the quantity, location, and accessibility of witnesses or documents makes one forum more convenient than the other, this factor favors neither party.

## C. Interests of Justice

■ The Court must also evaluate what venue will best promote the interests of justice. *See Graff,* 33 F.Supp.2d at 1122. A number of relevant considerations include relative familiarity with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, and the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgment. *Id.*

Travel Tags has chosen Minnesota as the forum in which to bring this suit. The parties do not dispute, and the Court does not foresee, any difficulties in providing the parties with a fair trial or in either party's ability to enforce judgment once the matter has been resolved. Although Travel Tags may be in a better financial position to litigate this matter wherever it may be brought, the Court is not persuaded that any disparity between the resources of the parties is significant enough to warrant transfer, especially in light of Travel Tags' offers to take depositions and have inspections in Texas. In addition, as

explained below, the Court disagrees with Performance's contention that Travel Tags' reliance upon the first-filed rule is in bad faith. Based on its analysis of these factors, the Court finds that the interests of justice do not weigh in favor of the transfer of this suit. As such, the Court finds that Minnesota is the proper venue for this case and denies Performance's Motion Transfer to the Northern District of Texas.

## II. The First–Filed Rule

■ The first-filed rule establishes that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to hear the case." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir.1993). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n. 2 (8th Cir.1999). "The first-filed rule is not intended to be rigid, mechanical, or inflexible[ ] but is to be applied in a manner best serving the interests of justice." *Nw. Airlines*, 989 F.2d at 1005 (quotations and citation omitted). The prevailing standard is that "in the absence of compelling circumstances," the first-filed rule should apply. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 120 (8th Cir.1985) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982)).

Here, it is not disputed that Travel Tags filed its Complaint in Minnesota before Performance filed its Complaint in Texas. Nor is it disputed that jurisdiction first attached in the District of Minnesota. In-

stead, Performance argues that the Court should dismiss or transfer Travel Tags' action under the compelling-circumstances exception to the first-filed rule.

In *Northwest Airlines*, the court identified two red flags indicating possible compelling circumstances: (1) when the plaintiff is on notice that the defendant was considering filing suit against it; and (2) when the first-filed suit was for declaratory judgment rather than damages or equitable relief. 989 F.2d at 1007. Performance argues that other courts have recognized circumstances such as extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping as bases for transferring venue despite the first-filed rule. *See E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 972 (3d Cir.1988). Under these other theories, Performance asserts that transfer is appropriate.

Specifically, Performance contends that while Travel Tags was negotiating license agreements for the '725 and '944 patents with Performance, Travel Tags filed but did not serve three anticipatory lawsuits against Performance[2] for the sole purpose of making sure that if Performance did bring an action in Texas, that the action would be preempted by an action filed in Minnesota. Performance asserts that by not advising Performance of its filings during the course of the negotiations, it shows that Travel Tags was engaged in "sophisticated gamesmanship designed to force Performance to either sign an onerous license agreement or fight patent infringement in Minnesota." (Def. Performance's Br. in Supp. of its Mot. to Dismiss, Trans-

---

2. On March 3, 2006, Travel Tags filed but did not serve a Complaint in the United States District Court, District of Minnesota, alleging that Performance had infringed the '944 patent. Travel Tags voluntarily dismissed this case on June 28, 2006. On June 28, 2006, Travel Tags filed but did not serve a new Complaint in the United States District Court, District of Minnesota, again alleging that Performance had infringed the '944 patent. Travel Tags dismissed this case on November 3, 2006. On July 11, 2006, Travel Tags filed but did not serve a Complaint in the United States District Court, District of Minnesota, alleging that Performance had infringed the '725 patent (the present action).

fer, or Stay the Instant Matter at 14.) Performance further asserts that because Travel Tags laid in wait while it was negotiating with Performance, Travel Tags' actions evidence bad faith. Performance thus implies that Travel Tags' representations and actions in its negotiations were not meaningful and therefore were not made in "good faith." Performance asserts that the manner in which Travel Tags proceeded with both its negotiations and the filing, but not serving, of the Complaints, creates compelling circumstances, justifying the Court in deviating from the first-filed rule. In response, Travel Tags asserts that the cases that Performance cites to are all distinguishable because those cases involve situations where the first-to-file plaintiff was filing for declaratory relief.

Although Performance asserts that Travel Tags filed for declaratory relief and damages in the three separate Complaints that it filed against Performance, this assertion is incorrect. Travel Tags filed a claim for infringement in all three actions; none of the actions were for declaratory judgment. Therefore, the Court agrees with Travel Tags that the cases cited by Performance are inapplicable here. Moreover, *Schwendiman Partners, LLC v. Hurt,* 71 F.Supp.2d 983 (D.Neb.1999), is even further distinguishable on its facts. Specifically, there the court was presented with more information substantiating that the first-filer's settlement negotiations were not being made in good faith. *See id.* at 988.

■ Therefore, the Court finds that Performance has not shown compelling circumstances that warrant a departure from the first-filed rule. Neither of the red flags identified in *Northwest Airlines* are present here. The record does not reflect that Performance provided notice of its intention to sue prior to Travel Tags filing its suit. And here, Travel Tags does not seek declaratory relief in its action. Further, the facts that Travel Tags had previously filed suit based on a different patent, and that Travel Tags filed the present suit while it was still negotiating a license agreement, do not provide compelling circumstances that justify departure from the first-filed rule. There is no evidence that Travel Tags was negotiating in bad faith. The Court will not penalize the true plaintiff for filing its suit in its forum state to protect its interests in the event that good faith settlement negotiations, which are made in an effort to avoid litigation, prove fruitless. Accordingly, in the interests of justice, the Court finds that the Minnesota court has priority to hear Travel Tags' case. Therefore, the Court denies Performance's request to dismiss or transfer Travel Tags' action to the Northern District of Texas.[3]

## III. Personal Jurisdiction

■ When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992)). However, "[t]o survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *see also Elecs. for Imaging, Inc. v. Coyle,* 340 F.3d

---

**3.** In its opposition brief, Travel Tags asks the Court to award its fees and costs related to this motion. At this time, the Court denies without prejudice Travel Tags' request. But the Court reserves the right to impose these and other requested sanctions upon motion brought by Travel Tags at a later date if Performance's discovery failures continue.

1344, 1349 (Fed.Cir.2003) (stating that "where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction"). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir.1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)); *see also Elecs. for Imaging*, 340 F.3d at 1349. For the purposes of determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Elecs. for Imaging*, 340 F.3d at 1349; *Digi–Tel*, 89 F.3d at 522.

 Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

 Under the minimum contacts analysis, a defendant may be subject to either specific or general jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed.Cir.2000). General jurisdiction arises when a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Id.; Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir.1991) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9, 416, 418–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific personal jurisdiction arises when a defendant purposely directs its activities at residents of the forum and that the litigation results from alleged injuries that arise out of or relate to those activities, even if a defendant's contacts are isolated and sporadic. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174; *LSI Indus.*, 232 F.3d at 1375.

Performance argues that its contacts with Minnesota are insufficient to support the exercise of personal jurisdiction.[4] Specifically, Performance alleges that it has never operated in or retained an agent to represent it in Minnesota; it does no manufacturing in Minnesota; it does not ship product into Minnesota; and it does not have any specific operations, sales force, or business in Minnesota. Therefore, Performance asserts that it has not main-

---

4. Performance asserts that the only connection to Minnesota alleged in the Complaint is Travel Tags' assertion that it is a Minnesota corporation. This is incorrect. Travel Tags generally alleges that Performance "does business, and has committed acts of infringement in this District." (First Amended Compl. ¶ 4.) Travel Tags also alleges that "[u]pon information and belief, Defendant has made, used, sold, offered for sale, imported, and/or exported lenticular card products in Minnesota[.]" (*Id.* ¶ 11.)

tained sufficient minimum contacts with Minnesota such that summoning it to Minnesota would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quotations omitted).

 This argument was raised for the first time in Performance's Reply Memorandum,[5] and therefore, the Court is not required to address it here. *See Black v. Indep. Sch. Dist. No. 316*, 476 F.Supp.2d 1115, 1121 (D.Minn.2007). Even so, the Court finds that based on Travel Tags' assertion (and Performance's concession) that Performance sends its lenticular cards[6] to offices in South Dakota and on Travel Tags' assertion that these offices then distribute at least some of those cards to Minnesota sellers whereby the product is purchased in Minnesota, Travel Tags has produced *prima facie* evidence supporting the exercise of personal jurisdiction over Performance. *See Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 429 (Fed.Cir.1996) (finding that the nonresident patent holder reasonably should have anticipated being brought into court in California in part because it established a regular chain of distribution, and relying on the contacts of the exclusive distributor which advertised and sold the patent holder's products in California); *Pecarina v. Tokai Corp.*, No. CUV, 01–1655 ADM/AJB, 2002 WL 1023153, at *3 (D.Minn. May 20, 2002) (stating that "per-

sonal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state") (citing *Clune v. Alimak AB*, 233 F.3d 538, 544–45 (8th Cir.2000); *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610, 613 (8th Cir.1994)[7]; *see also Tuttle v. Lorillard Tobacco Co.*, 118 F.Supp.2d 954, 959 (D.Minn.2000) ("Under the stream of commerce theory, due process is satisfied where a product manufacturer or distributor places a significant number of the product into the stream of commerce with knowledge that the product would be distributed into the forum state.") (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 107, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Viewing the evidence in the light most favorable to Travel Tags, the applicable factors weigh in favor of finding personal jurisdiction. *See Elecs. for Imaging*, 340 F.3d at 1350 ("To determine whether jurisdiction over an out-of-state defendant comports with due process, we look to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is rea-

5. While counsel for Performance asserted at the hearing on June 15, 2007, that this argument was raised at pages 9 through 11 and on page 12 of its opening brief, the Court notes that any mention of Performance's lack of connection to Minnesota was raised only in the context of Performance's transfer/venue argument; no specific argument as to lack of personal jurisdiction was raised in Performance's opening brief.

6. The specific lenticular cards that were addressed at the hearing as being sent to South Dakota are Target Gift Cards. Target Corpo-

ration, along with many Target stores, is located in Minnesota.

7. In *Barone*, the court held that although the manufacturer had no office, agent, or distributor in Nebraska, did not advertise in Nebraska, and did not send any products into Nebraska, it was subject to personal jurisdiction because the manufacturer had strategically selected a network of distributors (with one located in South Dakota) that would distribute to much of the United States, including Nebraska and the rest of the Midwest. *Id.* at 614–15.

sonable and fair."). Therefore, the Court denies Performance's motion to dismiss on personal jurisdiction grounds without prejudice. However, Performance will be allowed to raise the issue again after further discovery if there is a factual basis to do so.

## ORDER

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Performance's Motion to Dismiss, Transfer, or Stay the Instant Matter (Doc. No. 30) is **DENIED.**